United States District Court
Southern District of Texas
FILED

APR 0 1 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES ROWE AND CARRIE LEE ROWE | § § § | |
| VS. | § § | CIVIL ACTION NO. **B-02-064** |
| HARTFORD LLOYD'S INSURANCE COMPANY | § § | **"JURY"** |

## DEFENDANT HARTFORD LLOYD'S INSURANCE COMPANY'S
## NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF TEXAS, BROWNSVILLE DIVISION:

COMES NOW, Hartford Lloyd's Insurance Company ("Hartford"), Defendant in

the above-styled and numbered cause, and files this Notice of Removal to the United

States District Court for the Southern District of Texas, Brownsville Division. Hartford

states as follows:

I.

Hartford is the Defendant in a civil action pending in the 404th Judicial District

Court, Cameron County, Texas. This suit is entitled "JAMES ROWE and CARRIE LEE

ROWE vs. HARTFORD LLOYD'S INSURANCE COMPANY." This case has been

assigned Cause No. 2002-02-806-G. Pursuant to 28 U.S.C. § 1446(a), Hartford is filing

simultaneously herewith a List of Matters Filed which contains, as attachments thereto,

true and correct copies of all process, pleadings and orders served upon it in such state

court action, along with a certified copy of the State Court's Docket Sheet.

---

II.

This action was commenced on the 22nd day of February, 2002.  Hartford first received the citation and petition on the 4th day of March, 2002.  Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b) within 30 days of receipt of the initial pleading setting forth a claim for relief or other paper from which it may be first ascertained that the case is one which is or has become removable.

III.

The District Courts of the United States have original jurisdiction over this action based on complete diversity of citizenship between the parties, in that every Defendant is now, and was at the time the action commenced, diverse in citizenship from every Plaintiff.  No Defendant is or was at the commencement of this action a citizen of the State of Texas.

At the time of the filing of this action, Plaintiffs were and still are citizens of and are domiciled in the State of Texas.

At the time of the filing of this action, Hartford is and still remains a Texas Lloyd's Plan with its principal place of business in Texas.  In the case where one of the parties to an action in federal court is a Lloyd's Plan, an unincorporated association of members, "citizenship is determined not by its principal place of business or place of organization, but solely by the citizenship of its members."  Massey v. State Farm Lloyd's Insurance Company, 993 F.Supp. 568, 570 (S.D. Texas 1998).

In this case, all of Hartford's underwriters/members are citizens of states other than Texas.  Therefore, Hartford is not a citizen of Texas.  Plaintiffs, James Rowe and

Carrie Lee Rowe, being Texas citizens, have completely diverse citizenship from Hartford.

Hartford's underwriters/members are all citizens of States other than Texas as follows: Robert S. Brooks, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; James R. Garrett, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Michael H. Hughes, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Donald J. LaValley, who is and was at the commencement of this action domiciled in and a citizen of the State of Massachusetts; William B. Maclchodi, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Charles M. O'Halloran, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; David R. Robb, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Patrick J. Salve, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Leonard C. Smith, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Lowndesa A. Smith, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; Michael S. Wilder, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut; and Paul R. Zimmerman, who is and was at the commencement of this action domiciled in and a citizen of the State of Connecticut.

Plaintiffs assert claims against Hartford in their Original Petition alleging that Plaintiffs suffered damages covered by their homeowners insurance policy where Hartford Lloyd's is the insurer and that Hartford Lloyd's has breached the insurance contract as well as having acted in bad faith as defined by the Texas Ins. Code. Hartford Lloyd's vehemently denies plaintiffs' allegations and seeks a determination of plaintiffs' claims and defendant's defenses by this Court.

Because this action is wholly between citizens of different states, and because the matter in controversy exceeds a value or sum of $75,000, exclusive of interest and costs, this court has original jurisdiction over this cause pursuant to 28 U.S.C.§ 1332(a)(1).

IV.

Under 28 U.S.C. § 1441(a), venue of the removed action is proper in this court as a district and division embracing the place where the state action is pending.

V.

Hartford, the removing party, will promptly give the adverse party written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d). Hartford will promptly file a copy of this Notice of Removal with the clerk of the 404th Judicial District Court, Cameron County, Texas, where the action is currently pending, also pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Hartford Lloyd's Insurance Company, Defendant in this action, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes the case styled "JAMES ROWE and CARRIE LEE ROWE vs.

HARTFORD LLOYD'S INSURANCE COMPANY," Cause No. 2002-02-806-G, from the

404th Judicial District Court, Cameron County, Texas to the United States District Court

for the Southern District of Texas, Brownsville Division on this the 25th day of March,

2002.

Respectfully submitted,

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant
Hartford Lloyd's Insurance Company
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(361) 881-9217
FAX: (361) 882-6590

OF COUNSEL:
BARKER, LEON, FANCHER &
MATTHYS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on March 29th, 2002, a complete and correct copy of **Defendant Hartford Lloyd's Insurance Company's Notice of Removal** was served on each party by delivery to the following attorneys of record in the manner indicated below:

**Via Certified Mail/RRR No. 7001 1940 0005 0592 8476**
Mr. Reynaldo Ortiz
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504

**Via Certified Mail/RRR No. 7001 1940 0005 0592 8469**
Mr. David E. Kithcart
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447

F. Edward Barker

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES ROWE AND | § | |
| CARRIE LEE ROWE | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | |
| HARTFORD LLOYDS | § | |
| INSURANCE COMPANY | § | **"JURY"** |

### AFFIDAVIT OF JAMES L. FISCHER

| | | |
|---|---|---|
| STATE OF CONNECTICUT | § | |
| | § | ss: Hartford, CT       March 29, 2002 |
| COUNTY OF HARTFORD | § | |

BEFORE ME, the undersigned authority, personally appeared James L. Fischer, who is known to me, and who testified to the following under oath:

"My name is James L. Fischer. I am an adult, above the age of eighteen years of age and have personal knowledge of the facts stated in this Affidavit in that I am employed by the parent company of Hartford Lloyds Insurance Company as a Litigation Manager in the Select Litigation Unit and am an authorized representative of said Hartford Lloyds Insurance Company. In that capacity, I daily deal with matters relating to the Hartford Lloyds plan that is the Defendant in the above entitled and numbered cause and by virtue of my employment, know the facts contained herein and in the Defendant's Notice of Removal are true and correct."

**DATED: 29ᵗʰ day of March, 2002.**

x _[signature]_
James L. Fischer

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the 29ᵗʰ day of March, 2002, to certify which witness my hand and the seal of my authority.

x _[signature] Ellen Lea Goslicki_
Notary Public, State of Connecticut,
My Comm. Exp = 01/31/2004

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES ROWE AND | § | |
| CARRIE LEE ROWE | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| HARTFORD LLOYD'S | § | |
| INSURANCE COMPANY | § | **"JURY"** |

DEFENDANT HARTFORD LLOYD'S INSURANCE COMPANY'S
INDEX OF DOCUMENTS BEING FILED WITH STATE COURT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION.

In connection with the removal of the above numbered cause from the 404th

Judicial District Court, Cameron County, Texas, Defendant, Hartford Lloyd's Insurance

Company, has filed in connection with the removal of this action all executed process,

all pleadings asserting causes of action and all answers to those causes of action, all

orders signed by the state judge, an index of matters being filed, and a list of all counsel

of record. The specific matters filed are:

1. List of All Parties;

2. Civil Cover Sheet JS 44;

3. List of Counsel of Record;

4. Certified Copy of State Court's Docket Sheet;

5. Copy of Plaintiffs' Original Petition (Complaint);

6.    Copy of Executed Process on Defendant; and

7.    Copy of Defendant's Plea In Abatement, Original Answer and

Counterclaim for Declaratory Relief.

Respectfully submitted,

F. Edward Barker
State Bar No. 01741000
Attorney-in-Charge for Defendant
Hartford Lloyd's Insurance Company
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(361) 881-9217; FAX: (361) 882-6590

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS,
L.L.P.

---

## CERTIFICATE OF SERVICE

I certify that on March 29th, 2002, a complete and correct copy of **Defendant Hartford Lloyd's Insurance Company's Index of Documents Being Filed** was served on each party by delivery to the following attorneys of record in the manner indicated below:

**Via Certified Mail/RRR No. 7001 1940 0005 0592 8476**
Mr. Reynaldo Ortiz
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504

**Via Certified Mail/RRR No. 7001 1940 0005 0592 8469**
Mr. David E. Kithcart
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447

F. Edward Barker

---

Defendant Hartford Lloyd's Insurance Company's
Index of Documents Being Filed with State Court - Page 3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JAMES ROWE AND                    §
CARRIE LEE ROWE                   §
                                  §
VS.                               §    CIVIL ACTION NO.
                                  §
HARTFORD LLOYD'S                  §
INSURANCE COMPANY                 §

## LIST OF ALL PARTIES

1.    Plaintiffs - James Rowe and Carrie Lee Rowe.


2.    Defendant - Hartford Lloyd's Insurance Company.

Case is presently pending in the 404th Judicial District Court, Cameron

County, Texas, Cause No. 2002-02-806-G.


                          Respectfully submitted,


                          F. Edward Barker
                          State Bar No. 01741000
                          Attorney-in-Charge for Defendant
                          Hartford Lloyd's Insurance Company
                          Tower II, Suite 1200
                          555 N. Carancahua St.
                          Corpus Christi, Texas 78478
                          (361) 881-9217; FAX: (361) 882-6590

                          OF COUNSEL:
                          BARKER, LEON, FANCHER & MATTHYS,
                          L.L.P.

List of All Parties - Page 1

CIVIL COVER SHEET
(ATTACHMENT)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JAMES ROWE AND                          §
CARRIE LEE ROWE                         §
                                        §
                                        §   CIVIL ACTION NO. **B-02-064.**
VS.                                     §
                                        §
                                        §
HARTFORD LLOYD'S                        §
INSURANCE COMPANY                       §

**(c)   Attorneys for Plaintiffs (firm name, address and telephone number)**

Reynaldo Ortiz (Attorney-In-Charge)
State Bar No. 15324275
Federal I.D. No. 3767
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504
FAX: (956) 631-1384
(956) 687-4567

David E. Kithcart (Co Attorney-In-Charge)
State Bar No. 11541300
Federal I.D. No. _____
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447
FAX: (956) 440-1235
(956) 440-1234

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JAMES ROWE AND                    §
CARRIE LEE ROWE                   §
                                  §
VS.                               §        CIVIL ACTION NO.   **B-02-064**
                                  §
HARTFORD LLOYD'S                  §
INSURANCE COMPANY                 §

<u>COUNSEL OF RECORD</u>

1.    <u>Attorney-in-Charge for Plaintiffs</u>:

      Reynaldo Ortiz (Attorney-In-Charge)
      State Bar No. 15324275
      Federal I.D. No. 3767
      LAW OFFICE OF REYNALDO ORTIZ, P.C.
      1109 W. Nolana, Suite 204
      McAllen, Texas 78504
      FAX: (956) 631-1384
      (956) 687-4567


      David E. Kithcart (Co Attorney-In-Charge)
      State Bar No. 11541300
      Federal I.D. No. _____
      ROUNDTREE & KITHCART, L.L.P.
      222 East Van Buren, Suite 101
      P.O. Box 2447
      Harlingen, Texas 78551-2447
      FAX: (956) 440-1235
      (956) 440-1234

2.    Attorney-in-Charge for Defendant Hartford Lloyd's Insurance Company:

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant
Hartford Lloyd's Insurance Company
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(512) 881-9217; FAX (512) 882-9437

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS, L.L.P.

RUN DATE 03/26/02
RUN TIME 3:32 PM

JAMES ROWE AND CARRIE LEE ROWE

VS

HARTFOR LLOYD'S INSURANCE COMPANY

*   *   *   C L E R K ' S   E N T R I E S   *   *   *

00316901
HON. REYNALDO ORTIZ
1109 W. NOLANA, SUITE 204
MCALLEN, TEXAS        78504 0000

00544601
F. EDWARD BARKER
555 N. CARANCAHUA ST.
CORPUS CHRISTI, TX      78478 0000

(06)

BREACH OF CONTI

| Date | Entry |
|------|-------|
| 02/22/02 | ORIGINAL PETI |
| 02/22/02 | JURY FEE: Pd. |
| 02/25/02 | CITATION (CM) |
| 02/25/02 | INSURANCE COM |
| 02/25/02 | SERVED: 03 |
| 03/25/02 | ORIGINAL ANSWI |
| 03/25/02 | INSURANCE COM |
| 03/25/02 | COUNTER CLAIM |
|  | INSURANCE COM |

CAMERON COUNTY, TEXAS DISTRICT COURT

**CERTIFIED COPY**

CAUSE NO. *2002-02-806-G*

| | | |
|---|---|---|
| JAMES ROWE AND<br>CARRIE LEE ROWE | §<br>§ | IN THE DISTRICT COURT |
| | § | |
| VS. | § | *404th* JUDICIAL DISTRICT |
| | § | |
| HARTFORD LLOYD'S | § | |
| INSURANCE COMPANY | § | CAMERON COUNTY, TEXAS |

FILED _1.00_ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

FEB 2 2 2002

DISTRICT COURT OF CAMERON COUNTY TEXAS
_____ DEPUTY

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

COME NOW, **James Rowe and Carrie Lee Rowe, Plaintiffs**, complaining of **Hartford Lloyd's Insurance Company, Defendant,** and for cause show as follows:

### I.  Preliminary Statement

Plaintiffs bring this action against Defendant for breach of contract, breach of the duty of good faith and fair dealing, breach of Articles 21.21 and 21.55 of the Texas Insurance Code and breach of the Texas Deceptive Trade Practices-Consumer Protection Act in connection with an insurance policy sold by Defendant and Defendant's refusal to adhere to the terms of the policy.

### II.  Parties

Plaintiffs are individuals residing in Cameron County, Texas.

Defendant is a property casualty company, organized under the laws of the State of Texas, authorized to engage in the insurance business in Texas, and having its principal place of business is in Houston, Texas.  Defendant may be served via certified mail, return receipt requested through their registered agent for service: CT Corporation System, 350 North Saint Paul Street, Dallas, Texas 75201.

### III. Discovery Plan

Plaintiffs affirmatively plead that they seek monetary and other relief in excess of $50,000.00 and discovery is intended to be conducted under Level 2 under Rule 190.3.

### IV. Jurisdiction and Venue

A substantial part of the cause of action accrued in Cameron County, Texas.  The contract for insurance was executed and performed in Cameron County, Texas.  Venue is proper in this county

CERTIFIED COPY

as the Plaintiffs are residents of Cameron County and the subject matter of this lawsuit is in Cameron County, Texas. Jurisdiction is properly before this Court.

### V. Facts

Defendant, through its local recording agent's office in Harlingen, Texas, issued an insurance policy naming Plaintiffs as the insureds and insuring the Plaintiffs' premises and contents therein located at 702 East Bowie, Harlingen, Cameron County, Texas against all risks of physical loss to the property, among other things, for a continuous period beginning on January 7, 1991 and continuing to the present. Pursuant to the terms of the policy, numbered 65 RB 923451 CC, Plaintiffs have insurance protection up to $175,000.00 on their dwelling for any loss resulting from damage to the premises. Plaintiffs have insurance protection on their personal property up to $105,000.00 per claim. The policy purchased by Plaintiffs includes $35,000.00 for additional living expenses in the event a covered loss makes the insured residence wholly or partially untenantable. A true and correct copy is attached as **"Exhibit A"** and incorporated by reference as if fully set forth at length.

The building and contents insured by Defendant pursuant to the insurance contract sustained damage as the result of plumbing leaks, subsurface leaks, leaks in the air-conditioning systems and a pool leak. The leaks caused mold and fungi to develop in the home. The damage has in effect rendered the home irreparable and untenantable.

Plaintiffs timely made claims for the damages to their home beginning on May 8, 2000. The claims were justified by the following facts:

1.) The claims made by Plaintiffs for water damage are covered perils under the policy of insurance; and

2.) The policy was at all times material to this action in full force and effect.

Despite the fact that all conditions precedent to Plaintiffs' recovery have been performed or have occurred, Defendant has wholly failed and refused to pay Plaintiffs in accordance with its contract obligation. Defendant has failed and refused to complete a full scale investigation of the claims and to determine the scope of the mold and fungi damage on the insured premises.

2

## VI.  Causes of Action

**CERTIFIED COPY**

The Plaintiffs, beginning on May 8, 2000, notified Defendant of the damages sustained in their home.  Although all conditions precedent to the Defendant's obligation to pay the Plaintiffs' losses under the policy of insurance were performed or did occur, the Defendant has failed and refused to offer to pay Plaintiffs' for the full amount of damage sustained in their home.  The Defendant's delay in paying for the full amount of damage was unreasonable, unlawful, and actionable, and the producing and proximate cause of the harm suffered by the Plaintiffs, as more fully set out below.

A.    Unfair Claim Settlement Practice:  Article 21.21

Plaintiffs have a direct cause of action against Defendant under Article 21.21 of the Texas Insurance Code.  At the time of the events leading up to the instant lawsuit, Defendant was and is still engaged in the business of insurance, as that term is defined by law and as it is contemplated by Article 21.21.

After having received notice of the Plaintiffs' losses, losses clearly covered by the parties' contract of insurance, the Defendant engaged in several unfair settlement practices, as enumerated and declared unfair or deceptive in Article 21.21 of the Texas Insurance Code, including but not limited to:

1.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Plaintiffs' claims once the Defendant's liability became reasonably clear;

2.    Refusing to pay the full amount of the claim without first conducting a reasonable investigation of the matter, and;

3.    Failing to affirm or deny coverage within a reasonable time.

Additionally, Defendant violated section 16(a) of Article 21.21 of the Insurance Code by engaging in deceptive conduct as set out in the Texas Deceptive Trade Practices-Consumer Protection Act ("D.T.P.A.").  Specifically, Defendant violated the following sections: 17.46(b)(5) of the D.T.P.A. by representing that the homeowner's policy had benefits that it did not have; 17.46(b)(7) by representing that the homeowner's policy was of a particular standard or grade when

3

**CERTIFIED COPY**

it actually was of another; 17.46(b)(12) by representing that the policy of insurance conferred rights and remedies which it did not involve; and 17.46(b)(23) by failing to disclose information concerning the policy and the services that would be provided under the policy, when such information was intended to induce Plaintiffs into a transaction that they would not have entered had the information been disclosed.

As a proximate result of Defendant's tortious conduct, Plaintiffs have been damaged in an amount exceeding the minimum jurisdictional limits of this court. Plaintiffs have further incurred costs in having to employ the undersigned attorneys to prosecute this action, for which they should also be compensated.

Finally, the above-described acts and conduct were knowingly committed by Defendant, triggering the mandatory trebling provisions of Article 21.21.

**B.** **Breach of Duty of Good Faith and Fair Dealing**

By virtue of the insurer/insured relationship that was created by the contract of insurance into which Plaintiffs and Defendant entered, Plaintiffs are entitled to make a direct claim against Defendant pursuant to the terms of the policy. The special relationship between the parties to the contract imposed duties upon Defendant to act in good faith and to deal fairly with Plaintiffs. These duties were prescribed in the contract when it was consummated. However, from and after the time Plaintiffs' claims were presented to the Defendant, Defendant failed and refused, without good cause, to properly investigate Plaintiffs' claims and pay the damages as the policy required.

The Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. In this regard, the Plaintiffs will show that the Defendant failed to conduct a reasonable, proper investigation of the claim and refused to rely on true facts, resorting instead to producing faulty, incomplete, and biased estimates as subterfuges to avoid paying a valid claim.

4

CERTIFIED COPY

Consequently, the Defendant breached its duty to deal fairly and in good faith with the Plaintiffs. As a proximate result of Defendant's tortious conduct, Plaintiffs have been damaged in an amount exceeding the minimum jurisdictional limits of this court.

The breach of duty by the Defendant was aggravated by the kind of malice and/or fraud for which the imposition of exemplary damages is justified. The Defendant's conduct comprising the breach involved an extreme degree of risk of potential harm to the Plaintiffs and other occupants of the home and, despite the Defendant being actually and subjectively aware of the risk involved, the Defendant proceeded with conscious indifference to the rights, safety, and welfare of the Plaintiffs. The Defendant's conduct comprising the breach of duty also included the making of a material misrepresentation that was false and either known by the Defendant to be false or made as a positive assertion with reckless disregard for truth. The Defendant intended that the representation would be relied upon by the Plaintiffs and, in fact, the Plaintiffs did rely on the representation and suffered harm as a result. Plaintiffs, therefore, seek exemplary damages in an amount to be asserted by the trier of fact.

C.    Failure to Comply With Prompt Payment Statute:  Article 21.55

On or about May 8, 2000, Plaintiffs gave written notice to Defendant of claims involving water damage in their home. By November 30, 2000 Defendant had notice of a total of five claims involving water damage. Defendant failed to timely investigate and pay the claims made by Plaintiffs within the time periods prescribed by Article 21.55 of the Texas Insurance Code. Furthermore, Defendant failed to timely notify Plaintiffs whether they were going to accept or reject the claims. Defendant did not notify Plaintiffs that they needed more time to decide whether to accept or reject the claims.

As a proximate result of Defendant's tortious conduct, Plaintiffs have been damaged in an amount exceeding the minimum jurisdictional limits of this court. Plaintiffs are entitled to recover the amount of the claims and the additional sum of 18 percent per annum of the amount of the claims until the day before the judgment for the Plaintiffs is signed.

5

**CERTIFIED COPY**

D.    Breach of Contract

The homeowner's insurance policy issued by Defendant to Plaintiffs constitutes a written contract, the terms of which were to be complied with by both parties. Under the terms of this agreement, Defendant agreed to provide Plaintiffs with benefits for any claim covered by the policy. The contract of insurance was in full force and effect from January 7, 1991 continuing to the present. During the policy period, Plaintiffs' home sustained water damage upon which Plaintiffs' claims are based, and Plaintiffs gave Defendant notice of their claims.

In return for Defendant's agreement to provide coverage, Plaintiffs agreed to timely pay their insurance premiums and to notify Defendant of any claim being asserted against it. Plaintiffs fully performed the duties imposed by the contract. Additionally, the circumstances surrounding the water damage of the insured residence conform to the requirements of a compensable claim, as contemplated by the insurance contract. Defendant, in violation of its obligations and promises under the homeowner's policy, wrongfully refused to provide Plaintiffs with coverage of their claims. As a proximate result of Defendant's breach of its obligations under the policy, Plaintiffs have suffered actual damages in an amount that exceeds the minimum jurisdictional limits of this court.

Additionally, Plaintiffs have had to secure the services of the undersigned attorneys to prosecute this action, for which they also seek compensation.

E.    Violations of the Texas Deceptive Trade Practices Act

Plaintiffs purchased homeowner's insurance from Defendant and qualified as "consumers" as that term is defined by the D.T.P.A. Defendant violated various provisions of section 17.46(b) of the D.T.P.A. by:

1.    Representing that the homeowners policy sold to Plaintiffs had benefits that it did not have, in violation of section 17.46(b)(5);

2.    Representing that the homeowners policy was of a particular standard or grade when it was of another, in violation of section 17.46(b)(7);

6

CERTIFIED COPY

3.  Representing that the policy of insurance conferred rights and remedies that it did not have or involve, in violation of section 17.46(b)(12); and

4.  Failing to disclose information concerning the homeowners policy and the services that would be provided under the policy, when such information was known at the time of the transaction and failure to disclose such information was intended to induce Plaintiffs into a transaction which they would not have entered had the information been disclosed, in violation of section 17.46 (b)(23).

Defendant is also liable to Plaintiffs under section 17.50 of the D.T.P.A. in that they:

1.  Employed acts or practices in violation of Article 21.21 of the Texas Insurance Code, as amended, and violated the rules or regulations issued by the State Board of Insurance under Article 21.21 as more fully described above; and

2.  Engaged in unconscionable action by taking advantage of Plaintiffs' lack of knowledge, ability and experience to a grossly unfair degree and by providing goods and services that were grossly less than the consideration paid by Plaintiffs.

The conduct of Defendant, as described herein, was a producing cause of damages to Plaintiffs. In addition, because such conduct involved knowing violations of the D.T.P.A., Plaintiffs are entitled to recover additional statutory damages and treble damages in an amount exceeding the minimum jurisdictional limits of this court.

Plaintiffs are also entitled to the recovery of the attorney's fees they have incurred by having to employ the undersigned attorneys to prosecute this action.

### VII.  Jury Demand

Plaintiffs have heretofore made application and demand for trial by jury, and have tendered the fee in compliance with the provisions of Rule 216 of Tex.R.Civ.P.

### VIII.  Prayer

**WHEREFORE**, Plaintiffs request that Defendant be cited to appear and answer, and that on final trial of this case, Plaintiffs recover from Defendant the following:

7

**CERTIFIED COPY**

1.   The benefits payable under the insurance policy for each claim made the basis of this suit, together with all allowable interest under the law;

2.   Statutory penalty for utilizing unfair settlement practices, in violation of Article 21.21 of the Texas Insurance Code;

3.   Statutory penalty for Defendant's failure to comply with the prompt payment provisions of Article 21.55 of the Insurance Code;

4.   A reasonable sum for attorney's fees, as found by the trier of fact, with conditional sums for the services of Plaintiffs' attorney in the event of subsequent appeals;

5.   Interest on the judgment at the highest rate provided by law from the date of judgment until paid;

6.   Costs of suit; and

7.   Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

ROUNTREE & KITHCART, L.L.P.
DAVID E. KITHCART
State Bar No. 11541300
222 East Van Buren, Suite 101
P. O. Box 2447
Harlingen, Texas 78551-2447
Tel:  (956) 440-1234
Fax:  (956) 440-1235

LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504
Tel: (956) 631-8567
Fax: (956) 631-1384

REYNALDO ORTIZ
State Bar No. 15324275
Federal ID. No. 3767
GINA KARAM MILLIN
State Bar No. 24011072
ATTORNEYS FOR PLAINTIFFS

31690 1

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT, CAMERON COUNTY, TEXAS
DATE 03/11/02
BY_____ DEPUTY

8

DECLARATIONS PAGE
TEXAS HOMEOWNERS POLICY     FORM   B
   NEW
X RENEWAL CONTINUES
   AMENDED DATE:
INSURER: HARTFORD LLOYD'S INSURANCE COMPANY
         450 GEARS ROAD, SUITE 500, HOUSTON, TX 77067-4512

| PREFERRED | | POLICY NO. 65 RB  923451 CC |
|---|---|---|
| | NAMED INSURED /<br>MAILING ADDRESS | ROWE JAMES D & CARRIE LEE<br>702 EAST BOWIE<br>HARLINGEN          TX 78550 |

| POLICY PERIOD   EFFECTIVE DATE: 01-07-02 | EXPIRATION DATE: 01-07-03 |
|---|---|

AT 12:01 A.M. STANDARD TIME AT THE LOCATION OF THE RESIDENCE PREMISES/DWELLING
   702 EAST BOWIE
   HARLINGEN            CAMERON            TX 78550
   LOT: 13  BLOCK: W                        PPC: 04
   ADDITION: BLK 1 CROWN HEIGH              CITY LIMIT: INSIDE
   CONSTRUCTION: FRAME                      KEY RATE:  N/A

| MORTGAGEE: 1   LOAN NO. | PRODUCER: 811782 |
|---|---|
| COUNTRYWIDE FUNDING CORP        ITS<br>SUCCESSORS &/OR ASSIGNS<br>INS DEPT SV 22 PO BOX 10212 ATIMA<br>VAN NUYS          CA 91410 | SHEPARD WALTON KING INS GROUP<br>P. O. BOX 1830<br>HARLINGEN          TX 78551 |

| COVERAGES | LIMITS OF | |
|---|---|---|
| SECTION I PROPERTY COVERAGES | LIABILITY | PREMIUM |
| A. DWELLING | $ 175,000 | $ 1,953.00 |
|    OTHER STRUCTURES | $  17,500 | INCLUDED |
| B. PERSONAL PROPERTY | $ 105,000 | INCLUDED |
|    PERSONAL PROPERTY OFF PREMISES | $  10,500 | |
| SECTION II LIABILITY COVERAGES | | |
| C. PERSONAL LIABILITY (EACH OCCURRENCE) | $ 300,000 | |
| D. MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $   5,000 | |
| OTHER RESIDENTIAL PREMISES - LOCATION: | | |

LOSS OF USE COVERAGE                                    $   35,000
                              BASIC PREMIUM                       $ 1,953.00
INCREASED LIABILITY LIMITS                                       $    23.00
OTHER COVERAGES AND ENDORSEMENTS
ENDORSEMENT NUMBER AND TITLE

| HO-101 | 09-93 REPLACEMENT COST FOR PERSONAL PROPERTY | | $ 98.00 |
|---|---|---|---|
| HO-105 | 07-92 RESIDENCE GLASS<br>UNSCHEDULED GLASS | | $ 9.00 |
| HO-110 | 07-92 INC. LIMIT ON JEWERLY/WATCHES/FURS<br>TOTAL LIMIT $5,000<br>CONTINUED ON PAGE 2 | $ 4,500 | $ 78.00 |

| DEDUCTIBLES<br>(SECTION I ONLY) | AMOUNT OF<br>DEDUCTIBLE | DEDUCTIBLE<br>ADJUSTMENT<br>PREMIUM |
|---|---|---|
| DEDUCTIBLE CLAUSE 1 | $ 1,750 | |
| DEDUCTIBLE CLAUSE 2 | $ 1,750 | |
| DEDUCTIBLE CLAUSE 3 | | |

                              TOTAL POLICY PREMIUM   $ 2,073.00

OTHER COVERAGES, LIMITS AND EXCLUSIONS
APPLY - REFER TO YOUR POLICY
AGENCY AT HARLINGEN          ,  TEXAS SHEPARD WALTON KING INS GROUP



EXHIBIT
A

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL: 1-800-62

FORM H-125 PE  (ED. 5/98)

DECLARATIONS (CONTINUED)                    POLICY NO. 65 RB  923451  CC

NAME INSURED:    ROWE JAMES D & CARRIE LEE

FULL PAY SINGLE BILL
*THIS IS NOT A BILL*
YOU WILL BE BILLED SEPARATELY

RATING INFORMATION: SINGLE DWELLING BUILT IN 1955
UNDER 500 FEET OF A HYDRANT AND 5 ROAD MILES OR LESS OF A STATION
TERR 10   PROTECTION CLASS 04
FIRE PROTECTION PROVIDER HARLINGEN
DEVIATION 1.73

| | | | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|---|
| OTHER COVERAGES AND ENDORSEMENTS (CONT): | | | | |
| HO-201 | 07-92 | PERSONAL INJURY COVERAGE | | $    26.00 |
| | | EXCLUSION 3 ELIMINATED | | |
| HO-160 | 07-92 | SCHEDULED PERSONAL PROPERTY | | $   160.00 |
| | | CL 1 JEWELRY      PREM $  160 | $   12,325 | |
| | | M-12-1 SCHEDULE | | |
| | | FIRE ALARM CREDIT - CENTRAL | | $   137.00CR |
| | | BURGLAR ALARM CREDIT - CENTRAL | | $   137.00CR |

                        *  PLEASE NOTE  *
          ENTRIES ON ENDORSEMENTS MAY BE LEFT BLANK IF SHOWN ELSEWHERE
          IN THE POLICY
          FORM HO-B         04-01 REPLACES CURRENT VERSION.

              THE FOLLOWING ITEMS ARE ENCLOSED FOR YOUR REVIEW.
          CPF-79-0          CONSUMER BILL OF RIGHTS - HOMEOWNERS
          PLP-21-0          FAIR CREDIT REPORTING ACT NOTICE
          PLP-17-0          IMPORTANT NOTICE/AVISO IMPORTANTE
          PLP-27-0          EXPANDING HOMEOWNERS COVERAGE



| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|

To obtain information or to make a complaint:

Para informacion o para someter una queja:

You may call our toll-free telephone number for information or to make a complaint at:

Usted pueda llamar al numero de telephono gratis de nuestra para informacion o para someter una queja al:

#### 1-800-771-8557

#### 1-800-771-8557

You may also write to us at:

Usted tambien puede escribirle a nos:

THE HARTFORD-CUSTOMER CENTER

THE HARTFORD-CUSTOMER CENTER

P.O. BOX  25069
CHARLOTTE,  NC  28229-5069

P.O. BOX  25069
CHARLOTTE,  NC  28229-5069

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

Puede communicarse con Departamento de Seguros de Texas para conseguir informacion acerca de companias, coberturas, derechos o quejas al:

#### 1-800-252-3439

#### 1-800-252-3439

You may write to the Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

Puede escribir al Departamento de Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim, you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe communicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# QUICK REFERENCE
## TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ........................................ 1
Definitions .................................................. 1

**SECTION I – PROPERTY COVERAGE**

Coverage A
  Dwelling ................................................. 2
  Other Structures ...................................... 2
Coverage B
  Personal Property ..................................... 2
  Personal Property Off Premises ................... 2
Special Limits of Liability ............................. 2
Property Not Covered ................................... 3
Extensions of Coverage
  Debris Removal ........................................ 3
  Loss of Use ............................................ 3
  Reasonable Repairs .................................. 3
  Trees, Shrubs, Plants and Lawns ................ 4
  Property Removed ..................................... 4
  Consequential Loss .................................. 4
  Automatic Removal .................................... 4
Perils Insured Against
  Coverage A (Dwelling) ............................... 4
  Coverage B (Personal Property) .................. 4
Exclusions ................................................. 5
Deductible ................................................. 6

Section I Conditions
  Insurable Interest and Limit of Liability ........ 7
  Residential Community Property Clause ....... 7
  Duties After Loss
    **Your Duties After Loss** ....................... 7
    Our Duties After Loss ............................ 8
  Loss Settlement ...................................... 8
  Loss to a Pair or Set ............................... 9
  Salvage Rights ....................................... 9
  Appraisal .............................................. 9
  Loss Payment ........................................ 9
  Catastrophe Claims ................................. 9
  Other Insurance ..................................... 10
  Suit Against Us ...................................... 10
  Abandonment f Property .......................... 10
  **Vacancy–Suspension of Coverage** ......... 10
  Mortgage Clause .................................... 10
  No Benefit to Bailee ................................ 11

**SECTION II – LIABILITY COVERAGE**

Coverage C (Personal Liability) .................... 11
Coverage D (Medical Payments to Others) ...... 11
Exclusions
  Coverage C and D Exclusions .................... 11
  Coverage C Exclusions ............................ 13
  Coverage D Exclusions ............................ 13
Additional Coverages
  Claim Expenses ..................................... 13

Imperative Medical Expenses to Others ........ 14
Damage to Property of Others ..................... 14
Section II Conditions
  Limit of Liability .................................... 14
  Severability of Insurance ......................... 14
  **Duties After Loss** ............................... 14
  Duties of an Injured Person ...................... 14
  Payment of Claim Under Coverage D .......... 15
  Suit Against Us ...................................... 15
  Bankruptcy of the Insured ........................ 15
  Other Insurance ..................................... 15
  Notice of Settlement of Liability Claim ........ 15

**POLICY CONDITIONS
APPLYING TO SECTIONS I AND II**

Policy Period ............................................ 15
Concealment or Fraud ................................ 15
Liberalization Clause .................................. 15
Waiver or Change of Policy Provisions .......... 15
Cancellation ............................................. 16
Refusal to Renew ...................................... 16
Assignment .............................................. 16
Subrogation ............................................. 16
Death ...................................................... 16

---

## YOUR DUTIES AFTER A LOSS

**Section I:**

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

**Section II:**

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES 7 AND 14 OF YOUR POLICY

Prescribed by the State Board of Insurance
Homeowners Form B – Effective April 1, 2001
(Revised April 1, 2001)



# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1   **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2   **"Business"** includes trade, profession or occupation.

3.   **"Business day"**, when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4.   **"Insured"** means you and residents of your household who are:

   a.   your relatives; or

   b.   other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c.   any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured.**

   d.   With respect to any vehicle to which this policy applies:

      (1)   any employee of an **insured** while engaged in the employment of the **insured;** or

      (2)   any other person using the vehicle on an **insured location** with your consent.

5.   **"Insured location"** means:

   a.   the **residence premises.**

   b.   the part of other premises, other structures and grounds you use as a residence and:

      (1)   which is shown on the declarations page; or

      (2)   which you acquire during the policy period for your use as a residence.

   c.   any premises you use in connection with a premises in 5.a. or 5.b. above.

   d.   any part of a premises:

      (1)   not owned by an **insured;** and

      (2)   where an **insured** is temporarily residing.

   e.   vacant land, other than farm land, owned by or rented to an **insured.**

   f.   land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured.**

   g.   individual or family cemetery plots or burial vaults of an **insured.**

   h.   any part of a premises occasionally rented to an **insured** for other than **business** use.

6.   **"Occurrence"** means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

7.   **"Property damage"** means injury to, destruction of, or loss of use of property.

8.   **"Residence employee"** means an employee of an **insured** who performs duties related to the ownership, maintenance or use of the **residence premises,** including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an **insured.** This does not include employees while performing duties related to the **business** of an **insured.**

9. **"Residence premises"** means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an insured resides or intends to reside within 60 days after the effective date of this policy.

---

# SECTION I - PROPERTY COVERAGE

## COVERAGE A (DWELLING)

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

   The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

   We do not cover other structures:

   a. used for business purposes; or

   b. wholly rented to any person, unless used solely as a private garage.

3. wall to wall carpeting attached to a building on the **residence premises.**

## COVERAGE B (PERSONAL PROPERTY)

We cover:

1. a. personal property owned, worn or used by an **insured** while on the **residence premises.** This includes window or wall air conditioning units.

   b. at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured.**

2. a. personal property owned, worn or used by an **insured** anywhere in the world.

   b. at your request, personal property of a **residence employee** when:

      (1) the property is away from the residence premises of the **residence employee** and in the control of the **residence employee;** and

      (2) while the **residence employee** is performing work for you.

   Our total limit of liability under 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. Money/Bank Cards. $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured.**

2. Bullion/Valuable Papers. $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, transportation or other tickets.

3. Jewelry/Watches/Furs. $500 for loss by theft of gems, watches, jewelry or furs.

4. Business Personal Property. $2,500 on **business** property.

   We do not cover any **business** property:

   a. that consists of samples or articles for sale or delivery; or

   b.    if the property is away from the **residence premises.**

**PROPERTY NOT COVERED.** We do not cover:

1. articles separately described and specifically insured by this or other insurance.
2. animals or birds.
3. motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

   However, we do cover such vehicles which are not subject to motor vehicle registration and are:

   a.    devices and equipment for assisting the handicapped.

   b.    power mowers.

   c.    golf carts.

   d.    vehicles or machines used for recreational purposes while located on the **residence premises.**

   e.    farm equipment not designed for use principally on public roads.

4. trailers, semi–trailers or mobile homes.

   However, we do cover:

   a.    trailers and semi–trailers that are designed for use principally off public roads.

   b.    boat trailers while on the **residence premises.**

5. aircraft meaning any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

6. watercraft, including outboard motors and furnishings or equipment.

   We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the **residence premises.**

7. property of roomers or tenants.

8. property usually rented to others off the **residence premises.**

**EXTENSIONS OF COVERAGE.**

1. **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

   a.    debris of covered property if a Peril Insured Against causes the loss.

   b.    a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

   This does not increase the limit of liability that applies to the damaged property.

2. **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable, we cover:

   a.    additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

   b.    fair rental value, meaning the fair rental value of that part of the **residence premises** usually rented to others by you, less any expenses that do not continue.

   The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

   Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

   The periods of time for loss of use are not limited by expiration of this policy.

3. **REASONABLE REPAIRS.** If a Peril Insured Against caused the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4.  **TREES, SHRUBS, PLANTS AND LAWNS.** We cover trees, shrubs, plants and lawns, on the **residence premises,** only for loss caused by the following Perils Insured Against Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

    The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

    This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5.  **PROPERTY REMOVED.** We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6.  **CONSEQUENTIAL LOSS.** We insure:

    a.  property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

    b.  property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

        The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7.  **AUTOMATIC REMOVAL.** If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

    a.  the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

    b.  property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I PERILS INSURED AGAINST

---

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling), unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1.  **Fire and Lightning.**
2.  **Sudden and Accidental Damage from Smoke.**
3.  **Windstorm, Hurricane and Hail.**
4.  **Explosion.**
5.  **Aircraft and Vehicles.**
6.  **Vandalism and Malicious Mischief.**

7. **Riot and Civil Commotion.**

8. **Collapse of Building** or any part of the building.

9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

   Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

    This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. **Freezing** of household appliances.

12. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

---

## SECTION I EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

      (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured,** except while an **insured** is temporarily living there.

      (2) building materials and supplies not on the **residence premises.**

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by

      (1) wear and tear, deterioration or loss by any quality in property that causes it to damage or destroy itself.

      (2) rust, rot, mold or other fungi.

      (3) dampness of atmosphere, extremes of temperature.

      (4) contamination.

      (5) rats, mice, termites, moths or other insects.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

Form 8

g.  We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises.**

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

h.  We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

i.  We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j.  We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

(1)  maintain heat in the building; or
(2)  shut off the water supply and drain plumbing, heating and air conditioning systems of water.

k.  We do not cover loss caused by earthquake, landslide or earth movement.

2.  **GOVERNMENTAL ACTION.**

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3.  **BUILDING LAWS.**

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

"BUILDING LAWS" exclusion is modified to provide coverage only to the extent described under Perils Insured Against.

(a)  Coverage Provided.

You may use up to $5,000 (at no additional premium) for the increased costs that you incur due to the enforcement of any ordinance or law, which requires or regulates:

(1)  the construction, demolition or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2)  the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3)  the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Again st.

You may use all or part of this coverage to pay for the increased costs you incur to remove debris resulting from the construction, repair or replacement of property as stated in a). above. This is additional insurance and does not reduce Coverage A (Dwelling) the limit of liability.

(b)  Building Ordinance or Law Coverage Limitations.

We will not pay for the increased cost of construction:

(1)  if the building or structure is not rebuilt or repaired;

    (2)  if the rebuilt or repaired building or structure is not intended for the same type occupancy as the current building or structure;

    (3)  until the building or structure is actually repaired or rebuilt at the same premises; or

    (4)  unless the rebuilding or repairs are made as soon as reasonably possible after the loss or damage, not to exceed 365 days after loss unless you have requested in writing that this time limit be extended for an additional 180 days.

  (c)  We do not cover:

    (1)  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    (2)  the costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

  (d)  If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

### 4.  WAR DAMAGE.

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

### 5.  NUCLEAR DAMAGE.

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

## SECTION I  DEDUCTIBLE

**DEDUCTIBLE CLAUSE 1 – WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN –** The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 – ALL OTHER PERILS –** The amount shown on the declarations page for Deductible Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

## SECTION I  CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a.  to the <u>insured</u> for more than the amount of the <u>insured's</u> interest at the time of loss; or

    b.  for more than the applicable limit of liability.

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

**Article 6.13.** Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Duties After Loss.**

   a. **Your Duties After Loss.** In case of a loss to covered property caused by a Peril Insured Against, you must

     (1)  give prompt written notice to us of the facts relating to the claim.

     (2)  notify the police in case of loss by theft.

     (3)  (a)  protect the property from further damage.

           (b)  make reasonable and necessary repairs to protect the property.

           (c)  keep an accurate record of repair expenses.

     (4)  furnish a complete inventory of damaged personal property showing the quantity, description, amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

     (5)  as often as we reasonably require:

           (a)  provide us access to the damaged property.

           (b)  provide us with pertinent records and documents we request and permit us to make copies.

           (c)  submit to examination under oath and sign and swear to it.

     (6)  send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

           (a)  This proof of loss shall state, to the best of your knowledge and belief:

               (i)  the time and cause of loss.

               (ii)  the interest of the <u>insured</u> and all others in the property involved including all liens on the property.

               (iii)  other insurance which may cover the loss.

               (iv)  the actual cash value of each item of property and the amount of loss to each item.

           (b)  If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

               (i)  the replacement cost of the described dwelling.

               (ii)  the replacement cost of any other building on which loss is claimed.

               (iii)  the full cost of repair or replacement of loss without deduction for depreciation.

   b. **Our Duties After Loss.**

     (1)  Within 15 days after we receive your written notice of claim, we must

           (a)  acknowledge receipt of the claim.

           If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

    (b)  begin any investigation of the claim.

    (c)  specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

  (2)  After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

    (a)  within 15 business days; or

    (b)  within 30 days if we have reason to believe the loss resulted from arson.

  (3)  If we do not approve payment of your claim or require more time for processing your claim, we must:

    (a)  give the reason for denying your claim, or

    (b)  give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4.  **Loss Settlement.** Covered property losses are settled as follows:

a.  Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

  (1)  the actual cash value at the time of loss determined with proper deduction for depreciation;

  (2)  the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

  (3)  the specified limit of liability of the policy.

b.  Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awnings and fences, will be at replacement cost settlement subject to the following:

  (1)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

  (2)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

Replacement Cost of the Loss

X

Coverage A (Dwelling) Limit of Liability

80% of Replacement Cost of the Dwelling

  (3)  If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage but our payment will not exceed the smallest of the following:

  (1)  the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

  (2)  the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3)   the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5.   **Loss to a Pair or Set.** In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6.   **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7.   **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

   a.   the full replacement cost of the dwelling.

   b.   the full replacement cost of any other building upon which loss is claimed.

   c.   the full cost of repair or replacement of loss to such building, without deduction for depreciation.

   If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

   Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8.   **Loss Payment.**

   a.   If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

   b.   If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9.   **Catastrophe Claims.**

   If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or Major Natural Disaster means a weather related event which:

   a.   is delcared a disaster under the Texas Disaster Act of 1975; or

   b.   is determined to be a catastrophe by the State Board of Insurance.

10.  **Other Insurance – Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11.  **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12.  **Abandonment of Property.** There can be no abandonment of property to us.

13.  **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

   a. The word "mortgagee" includes trustee.

   b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

   c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

   (1) at our request, pays any premiums due under this policy, if you have failed to do so.

   (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

   (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

   All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

   e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) the mortgagee's rights under the mortgagee will be transferred to us to the extent of the amount we pay.

   (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   f. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

   If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

   g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

   h. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non–renewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

---

# SECTION II   LIABILITY COVERAGE

---

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include pre–judgement interest awarded against the **insured;** and

2.  provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments To Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury.**    Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to **residence employees.** As to others, this coverage applies only:

1.  to a person on the **insured location** with the permission of an **insured.**
2.  to a person off the **insured location,** if the **bodily injury:**

    a.  arises out of a condition on the **insured location** or the ways immediately adjoining.

    b.  is caused by the activities of an **insured.**

    c.  is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured.**

    d.  is caused by an animal owned by or in the care of an **insured.**

---

## SECTION II EXCLUSIONS

1.  **COVERAGE C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

    a.  **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured;**

    b.  **bodily injury** or **property damage** arising out of or in connection with a **business** engaged in by an **insured.** But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

    c.  **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location:**

        (1)  on an occasional basis if used only as a residence.

        (2)  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

        (3)  in part, as an office, school or studio.

        (4)  if the rental is for not more than three car spaces or stalls in garages or stables.

    d.  **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services.

    e.  **bodily injury** or **property damage** arising out of a premises:

        (1)  owned by an **insured;**

        (2)  rented to an **insured;** or

        (3)  rented to others by an **insured;**

        that is not an **insured location.**

    This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

    f.  **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

        (1)  motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

        (2)  trailers, semi-trailers or mobile homes;

        which are owned or operated by or rented or loaned to an **insured.**

However, this exclusion does not apply to:

(1)   motor vehicles which are not subject to motor vehicle registration and are:

   (a)   used for assisting the handicapped.

   (b)   used to service an **insured location.**

   (c)   golf carts while on the **residence premises** or used for golfing purposes.

   (d)   designed and used for recreational purposes, and are:

      (i)   not owned by an **insured;** or

      (ii)   owned by an **insured** while on the **residence premises.**

   (e)   in dead storage on the **residence premises.**

   (f)   used exclusively on the **residence premises.**

(2)   trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

g.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1)   with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured.**

(2)   powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured.**   But, outboard motors of more than 25 total horsepower are covered for the policy period if:

   (a)   you acquire them prior to the policy period and:

      (i)   you declare them at policy inception; or

      (ii)   your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

   (b)   you acquire them during the policy period.

(3)   that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured.**

This exclusion does not apply while the watercraft is on the **residence premises.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

h.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

i.   **bodily injury** or **property damage** arising out of:

(1)   the entrustment by an **insured** to any person; or

(2)   the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

    j.    **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

    k.    **bodily injury** or **property damage** arising out of the transmission of sickness or disease by an **insured** through sexual contact.

    l.    **bodily injury** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **insured** under any workers' compensation law or occupational disease law.

2.    **Coverage C (Personal Liability) does not apply to:**

    a.    liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

        (1)    that directly relate to the ownership, maintenance or use of an **insured location;** or

        (2)    where the liability of others is assumed by an **insured;**

        unless excluded elsewhere in this policy.

    b.    **property damage** to property owned by an **insured.**

    c.    **property damage** to property rented to, occupied or used by or in the care of the **insured.**

This exclusion does not apply to **property damage** caused by fire, smoke or explosion.

    d.    **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

    e.    **bodily injury** to you or an **insured** within the meaning of part a. or part b. of **insured** as defined.

3.    **Coverage D (Medical Payments to Others) does not apply to:**

    a.    **bodily injury** to a **residence employee** if the **bodily injury:**

        (1)    occurs off the **insured location;** and

        (2)    does not arise out of or in the course of the **residence employee's** employment by an **insured.**

    b.    **bodily injury** to any person, other than a **residence employee** of an **insured,** regularly residing on any part of the **insured location.**

## SECTION II ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1.    **Claim Expenses. We pay:**

    a.    expenses we incur and costs taxed against an **insured** in any suit we defend.

    b.    premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

    c.    reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

    d.    interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.  **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others if imperative at the time of the accident.

3.  **Damage to Property of Others.** We pay replacement cost up to $500 per **occurrence** for **property damage** to property of others caused by an **insured.**

    We do not pay for **property damage:**

    a.  caused intentionally by an **insured** who is 13 years of age or older.
    b.  to property owned by an **insured.**
    c.  to property owned by or rented to a tenant of an **insured** or a resident in your household.
    d.  arising out of:
        (1)  a **business** engaged in by an **insured.**
        (2)  any act or omission in connection with a premises owned, rented or controlled by an **insured,** other than the **insured location.**
        (3)  the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

    This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured.**

## SECTION II CONDITIONS

1.  **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence.** This limit is the same regardless of the number of **insureds,** claims made or persons injured.

    The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for **bodily injury** to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2.  **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3.  **Duties After Loss.** In case of an accident or **occurrence,** the **insured** will perform the following duties that apply or will help us by seeing that these duties are performed:
    a.  Give written notice to us or our agent as soon as is practical, which sets forth:
        (1)  the identity of the policy and **insured.**
        (2)  reasonably available information on the time, place and circumstances of the accident or **occurrence.**
        (3)  names and addresses of any claimants and witnesses.
    b.  Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence.**
    c.  At our request, help us:
        (1)  to make settlement.
        (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured.**
        (3)  with the conduct of suits, including attending hearings and trials.
        (4)  to secure evidence and obtain the attendance of witnesses.
    d.  The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the **bodily injury.**

4.  **Duties of an injured Person – Coverage D (Medical Payments to Others).**

    The injured person or someone acting for the injured person will:
    a.  give us written proof of claim, under oath if required, as soon as is practical.
    b.  authorize us to obtain copies of medical reports and records.

    The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Coverage D (Medical Payments to Others).** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement.

   Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7. **Bankruptcy of the Insured.** Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this policy.

8. **Other Insurance – Section II.** If the **insured** has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

   However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

   a.    any motor vehicle or recreational motor vehicle at the **residence premises;** or
   b.    watercraft,

   this policy will not apply to the extent that any valid and collectible insurance is available to the **insured.**

9. **Notice of Settlement of Liability Claim.**

   a.    We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured** under the liability section of this policy.

         We will give the **insured** notice within 10 days after the date the offer is made.

   b.    We will notify the **insured** in writing of any settlement of a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 30 days after the date of the settlement.

## SECTION I AND II CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II which occurs during the policy period stated on the declarations page.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured,** if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a.    You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b.    We may cancel this policy only for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

         (1)   If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

               The effective date of cancellation cannot be before:

      (a)  the 10th day after we mail notice if we cancel for non-payment of premium.

      (b)  the 30th day after we mail notice if we cancel for any reason.

  (2)  If this policy has been in effect 90 days or more, we may not cancel this policy unless:

      (a)  you do not pay the premium or any portion of the premium when due.

      (b)  the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

      (c)  you submit a fraudulent claim.

      (d)  there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

  c.  If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

  d.  We may not cancel this policy solely because you are an elected official.

6.  **Refusal to Renew.**

  a.  We may not refuse to renew this policy because of claims for losses resulting from natural causes.

  b.  We may not refuse to renew this policy because you are an elected official.

  c.  We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below.

If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

  d.  If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of our refusal to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew this policy.

7.  **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8.  **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9.  **Death.** If the named insured dies, we insure:

  a.  the named insured's spouse, if a resident of the same household at the time of death.

  b.  the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

  c.  any person who is an **insured** at the time of such death, while a resident of said premises.

## Good News For Texas Homeowners Policyholders!

### Up to $5,000 of Extra Coverage at No Extra Cost

Effective April 1, 2001, your Homeowners Policy now gives you up to $5,000 of additional coverage free of charge. This extra protection covers increased construction costs resulting from building ordinances, laws or required Texas Windstorm Insurance Association building codes, providing your home is repaired or rebuilt within one year from the date of the loss. Plus, you can even use this extra coverage for increased cost of debris removal.

Please see the enclosed Increased Cost of Construction– Building Laws Endorsement for details and read it carefully. It describes what is and is not covered. If you have any questions, please contact our customer service representatives.

PLP–27–0

**Fair Credit Reporting Act Notification**

THe Hartford's eligibility and pricing decisions are based in part on consumer report(s) from a consumer reporting agency. If you would like to obtain a free copy of the report(s) ordered to review their accuracy, please contact ChoicePoint, Inc. at the following address within sixty (60) days of receipt of this notice: ChoicePoint, Inc., P.O. Box 105108, Atlanta, GA 30348-5108. Or call, toll free, at 1-800-456-6004, Monday through Friday, 8:a.m. to 6:00 p.m., Eastern Time.

Please be advised that the consumer reporting agency did not make the decisions concerning Hartford's eligibility and pricing and will be unable to provide you with specific reasons for Hartford's decisions. However, incorrect information in a consumer report can have an adverse effect on your eligibility or premium amount. If you believe the information in the consumer report is incorrect, you have the right to dispute the accuracy and/or completeness of the information in your consumer report directly with the consumer reporting agency.

**Notice of Our Insurance Information Practices and Privacy Act Notification**

The following notice applies if you live in one of the following states: **Arizona, California, Connecticut, Georgia, Illinois, Minnesota, Montana, Nevada, New Jersey, North Carolina, Oregon, and Virginia.**

While your application for insurance is our primary source of information, we may also collect additional information from other sources about you and other persons insured under your policy. Such information will not be disclosed to third parties without your authorization except in connection with our business and as otherwise permitted or required by law.

You have the right to know what kind of information (except for information collected to evaluate a claim or the possibility of a law suit or misrepresentation exists) we keep in our files about you, to have access to this information, and to get a copy. You are entitled to ascertain the indentities of persons to whom the information has been disclosed within two (2) years prior to your request. If you are interested in obtaining information from your file, please write to us and include your complete, name, address and policy number. If after reading the information in your file you believe it is incorrect, you should notify us indicating what you believe is incorrect and why. We will reinvestigate the matter and either correct our records or agree to place a statement from you in our files explaining why you believe this information is incorrect. You may make a written request within ninety (90) days of the date of this notice to obtain the specific reasons for our pricing decisions and the source and information relied upon in making such decisions. Upon your request, we will also send you a more detailed explanation of our insurance information practices. If you believe the information in your file is incomplete or incorrect, you may write to us at

Please send your request to:

      THE HARTFORD-CUSTOMER CENTER
      P.O. BOX 25069
      CHARLOTTE,            NC 28229-5069



# CONSUMER BILL OF RIGHTS FOR HOMEOWNERS AND RENTERS INSURANCE

**A VISO:** Este documento plantea sus derechos como asegurado. Usted tiene el derecho de llamar a su compañía y pedirle una copia en español de sus derechos como asegurado.

## INTRODUCTION

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance adopted the Bill of Rights and requires insurance companies to provide you with a copy when they issue you a policy.

Texas law gives you certain rights regarding your homeowners and renters insurance. This Bill of Rights identifies your most important rights, but it does not include all your rights. Also, there are some exceptions to the rights listed here. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact the Texas Department of Insurance at 1-800-252-3439 or Consumer Services (111-1A), P.O. Box 149091, Austin, TX 78714-9091.

This Bill of Rights does not address your responsibilities. Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

## INFORMATION

1. You have the right to call the Texas Department of Insurance free of charge at 1-800-252-3439 to learn more about:

   – your rights as an insurance consumer;

   – the license status of an insurance company or agent;

   – an insurance company's financial condition;

   – the complaint ratio and type of consumer complaints filed against an insurance company;

   – an insurance company's rate as compared to the range of rates set by the state; and

   – other consumer concerns.

2. You have the right to a toll-free number to call your insurance company free of charge with questions or complaints. You can find this number on a notice accompanying your policy. This requirement does not apply to small insurance companies.

## BUYING INSURANCE

3. Your insurance company or agent cannot make untrue, misleading, or deceptive statements to you relating to insurance.

4. You have the right to be told in writing why you are being denied coverage or why you are being denied access to less expensive coverage offered by other insurance companies represented by your agent. You must request the explanation.

5. For property located in 14 counties along the coast, you have the right to buy windstorm, hurricane, and hail coverage from the Texas Catastrophe Property Insurance Association (Catpool). Your property must meet certain requirements, and the coverage is limited to $250,000 for your home and personal property or $100,000 for your personal property. This right applies whether or not you buy other insurance for your house. In all other counties your homeowners policy includes this coverage.

-1-

## CANCELLATION/REFUSAL TO RENEW YOUR POLICY

- **Cancellation** means the policy terminates **before the end** of the policy period or the insurance company reduces or restricts coverage under the policy.

- **Refusal to renew** and **non-renewal** mean the policy terminates **at the end** of the policy period.

- The **policy period** is shown on the declarations page at the front of your policy.

6. Your insurance company cannot cancel:

    - your initial policy after it has been in effect for 90 days; or

    - your renewed policy at any time

    **unless:**

    - you don't pay your premium when due; or

    - you make a fraudulent claim.

7. To cancel your policy, your insurance company must mail you at least 10 days notice of the cancellation. However, if you have paid your premium when due and the policy has been in effect less than 90 days, the insurance company must mail you notice of cancellation 30 days before your policy is canceled.

8. If the insurance company does not mail you notice of non-renewal at least 30 days before the policy expires, you have the right to require that your policy be renewed.

9. You have the right to a written explanation of an insurance company's decision to cancel or not to renew your policy. You must request the explanation.

10. You have the right to cancel your policy at any time and receive a refund of the remaining premium.

11. If you marital status changes, you have the right to continue your insurance coverage. You have a right to a new policy in your name that has benefits equal to your prior policy benefits. The insurance company cannot date the new policy so that a gap in coverage occurs.

12. Your insurance company cannot cancel or refuse to renew your policy because you have filed claims for damage from natural causes, including weather–related damage. However, your insurance company can cancel your policy for weather–related claims during the first 90 days of the initial policy period.

13. Your insurance company cannot refuse to renew your policy because you have filed claims for damage that are not from natural causes unless:

    - you have filed two or more of these claims in less than three years; and

    - the insurance company has notified you that they may refuse to renew your policy if you file a third claim within the three–year period.

## CLAIMS

14. You have the right to reject any settlement amount, including any valuation, offered by the insurance company. You have the right to have your home repaired by the repair person of your choice.

15. The insurance company must tell you in writing why your claim or part of your claim was rejected.

16. You have the right to refuse to provide your insurance company with information that does not relate to your claim. In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

17. When you file a claim on your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet the claims processing and payment deadlines in your policy, you have the right to collect 18% annual interest and attorney's fees in addition to your claim amount.

Generally, your insurance company must approve or deny your claim **within 36 days after the company receives notice of your claim**, (plus the time you take to provide requested information) unless the company notifies you that more time is needed and tells you why. This additional period of time cannot exceed 45 days.

If your claim is approved, your insurance company must pay the claim **within 5 business days** after they notify you they have accepted your claim.

If your claim results from a weather-related catastrophe or other major natural disaster as defined by the Texas Department of Insurance, your insurance company may take 45 more days to approve or deny your claim and 15 more days to pay your claim.

18. You have the right to be treated fairly and honestly when you make a claim. If you believe an insurance company has treated you unfairly, call the Department of Insurance.

### DISCRIMINATION

19. An insurance company cannot:

    – refuse to insure you, cancel your policy, refuse to renew your policy

    – offer you different terms, conditions or benefits, or

    – charge you a different rate

    because of your race, color, religion, sex, familial status, national origin, or mental or physical disability.

20. Unless the insurance company has a statistically justified basis, it cannot refuse to renew your policy because of your age or where you live. Insurance companies must be able to prove that the difference between different rated groups is based on verifiable statistical differences. To do this they must show that there are differences between the costs of insuring one group (defined by age or location) and other groups. They must also prove that these different costs cannot be explained by any other characteristic of the policyholders within that group.

### ENFORCING YOUR RIGHTS

21. You have the right to complain to the Texas Department of Insurance about any insurance company and/or insurance matter and to receive a prompt investigation and response to your complaint. To do so, your should:

    – call 1-800-252-3439;

    – write to the Texas Department of Insurance, Consumer Services (111-1A).

      P.O. Box 149091, Austin, Texas 78714-9091; or

    – fax your complaint to (512) 475-1771.

22. If an insurance company violates your rights, you have the right to sue that company in court, including small claims court, with or without an attorney, or file a complaint with the Texas Department of Insurance.

23. You have the right to demand appraisal to resolve a dispute over the amount of your loss. The insurance company also has the right to demand appraisal. In either case, you must pay a portion of the costs of the appraisal. The appraisal decision is binding on you and the insurance company as to the amount of the loss only.

24. You have the right to ask in writing that the Texas Department of Insurance make or change rules on any homeowners insurance issue that concerns you. Send your written request to: Texas Department of Insurance, Attn: Commissioner (112-1A), P.O. Box 149104, Austin, TX 78714-9104.



# Privacy Policy and Practices of
# The Hartford Financial Services Group, Inc.
# and its Affiliates (The Hartford)

### Applicable to The Hartford's United States Customers

We at The Hartford value our customer's trust and are committed to the responsible management, use and protection of personal information. All insurance companies must collect a certain amount of personal information to service customers and administer business. This notice describes our policy regarding the collection and disclosure of personal information.

Personal information, as used in this notice, means information that identifies an individual personally and is not otherwise available to the public. It includes personal financial information such as credit history, income, financial benefits, policy or claim information. It also includes personal health information such as individual medical records or information about illness, disability or injury.

We collect personal information to support our normal business operations. We may obtain personal information directly from the customer, from customer—related transactions and from third parties, such as a consumer reporting agency. Personal information such as name, address, income payment history or credit history are gathered from sources such as applications, transactions and consumer reports.

The Hartford's employees have access to personal information in the course of doing their jobs, which includes underwriting policies, paying claims, developing new products or advising customers of our products and services.

We may share personal financial information with our affiliates, such as insurance companies, banks, agents, brokerage firms and administrators.

To service our customers and administer our business, we may also share information with unaffiliated third parties, including agents, brokerage firms, insurance companies, administrators and service providers and as otherwise permitted or required by law. In addition, we may share personal financial information with other unaffiliated third parties who are assisting us by performing services or functions, such as conducting surveys, marketing our products or services, or offering financial products or services under a joint agreement between us and one or more financial institutions. Prior to sharing personal financial information with unaffiliated third parties, except as described in this policy, we will give affected customers an opportunity to direct that such information not be disclosed.

We may disclose personal health information with proper written authorization or as otherwise permitted or required by law.

We use manual and electronic security procedures to maintain the confidentiality and integrity of personal information in our possession and guard against its unauthorized access. Some techniques we employ to protect information include locked files, user authentication, encryption, firewall technology and the use of detection software.

We are responsible for identifying information that must be protected, providing an adequate level of protection for that data and granting access to protected data only to individuals who must use it in the performance of the job—related duties. Employees who violate our Privacy Policy will be subject to disciplinary action, which may include termination.

We will continue to follow this policy regarding personal information even when a customer relationship no longer exists.

The Hartford will notify customers of our Privacy Policy at the inception of our business relationship and annually thereafter. The Privacy Policy is subject to change at any time. We will notify customers of any modifications at least annually.

CAF—2665—0

**CERTIFIED COPY**

Citation for Personal Service  - BY CERTIFIED MAIL    Lit. Seq. # 5.003.01

No. 2002-02-000806-G                **ORIGINAL**

## T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: HARTFORD LLOYD'S INSURANCE COMPANY
SERVING REGISTERED AGENT
CT CORPORATION SYSTEM
350 NORTH SAINT PAUL STREET
DALLAS, TEXAS 75201

the      DEFENDANT      , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 404th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said      PETITION      was filed on FEBRUARY 22, 2002 .  A copy of same accompanies this citation.

The file number of said suit being No. 2002-02-000806-G.

The style of the case is:

JAMES ROWE AND CARRIE LEE ROWE
VS.
HARTFOR LLOYD'S INSURANCE COMPANY

Said petition was filed in said court by        HON. REYNALDO ORTIZ      (Attorney for            PLAINTIFF            ), whose address is 1109 W. NOLANA, SUITE 204 MCALLEN, TEXAS  78504            .

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

U.S. Postal Service

**CERTIFIED COPY**

CERTIFICATE OF DELIVERY OF MAIL

| ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE | |
|---|---|

Rule 106 (a)(2): The citation shall be served by mailing to the defendant by Certified Mail, Return Receipt Requested, a true copy of the citation.

Sec. 17.027, Rules of Civil Practice and Remedies Code, if not prepared by Clerk of Court.

NAME OF PREPARER          TITLE

ADDRESS

CITY          STATE          ZIP

I hereby certify that on the 25th of

FEBRUARY  2002,  I mailed to

HARTFORD LLOYD'S INSURANCE COMPANY

by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO.   1461469665

RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

AURORA DE LA GARZA          , District Clerk
Cameron County, Texas

_____          , Deputy

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE
DEPUTY

## CERTIFIED COPY

FILED __8:00__ O'CLOCK __ᴬ__ M
AURORA DE LA GARZA DIST. CLERK

MAR 2 5 2002

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

CAUSE NO. 2002-02806-G

| | | |
|---|---|---|
| JAMES ROWE AND | § | IN THE DISTRICT COURT |
| CARRIE LEE ROWE | § | |
| | § | 404TH JUDICIAL DISTRICT |
| VS. | § | |
| | § | CAMERON COUNTY, TEXAS |
| HARTFORD LLOYDS | § | |
| INSURANCE COMPANY | § | |

## DEFENDANT'S PLEA IN ABATEMENT, ORIGINAL ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Hartford Lloyds Insurance Company, Defendant in the above-styled and numbered cause, without waiving any of its defenses under any contract(s) of insurance in question, and still insisting upon any policy conditions, exclusions and other policy defenses that it may have now or may arise in the future, hereby makes and files this its Plea in Abatement, Original Answer and Counterclaim for Declaratory Relief, in response to Plaintiffs' Original Petition and for such answer would respectfully show unto the Court the following:

1.

## PLEA IN ABATEMENT

1.1.    Hartford Lloyds Insurance Company, Defendant in this cause, makes this plea in abatement objecting to the court's consideration of this cause on the merits on the following grounds:

1.2.    This cause must be abated for a period of at least 60 days because Plaintiffs have failed to comply with the terms and conditions of their policy of insurance

---

Defendant's Plea in Abatement, Original Answer
and Counterclaim for Declaratory Relief

# CERTIFIED COPY

Ms. Aurora De La Garza
District Clerk - Cameron County
Cameron County Courthouse
Page 2

cc:  **VIA CM/RRR # 7001 1940 0005 0833 6704 and via fax (956) 631-1384**
Mr. Reynaldo Ortiz
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504


**VIA CM/RRR # 7001 1940 0005 0592 7868 and via fax (956) 440-1235**
Mr. David E. Kithcart
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447

# CERTIFIED COPY

and allow for an inspection of their home.  Defendant requests that this court abate this cause of action for a period of time until Defendant can conduct an adequate investigation and/or inspection of Plaintiffs' property pursuant to the terms and conditions of their policy of insurance.

1.3.   Further, without waiving the foregoing, Defendant specifically denies that pre-suit notice was given pursuant to Article 21.21 of the Texas Insurance Code and/or Texas Business Code and Commerce Code §17.50 as required.  Defendant requests that the suit be abated until Plaintiff presents a proper demand and the statutory period has elapsed.

1.4.   On the 28th day of January, 2002, Defendant, Hartford Lloyds Insurance Company invoked the mandatory appraisal provisions of the insurance contract between the parties.  The appraisal provisions state:

7.   Appraisal.  I you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal.  Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred.  The two appraisers will then set the amount of loss, stating separately the actual cash value and loss of each item.  If you or we request that they do so, the appraisers will also set:

A.   the full replacement cost of the dwelling.

B.   the full replacement cost of any other building upon which loss is claimed.

C.   the full cost of repair or replacement of loss to such building, without deduction for depreciation.

# CERTIFIED COPY

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

**2.**

This lawsuit should be abated in its entirety pending completion of the appraisal process at which time the decision of the appraisers will be submitted to this Honorable Court for entry as a Final Judgment.

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

2.1.    In the alternative, Defendant, Hartford Lloyds Insurance Company hereby asserts its legal prerogative and demands that Plaintiffs be required to prove their allegations by a preponderance of credible evidence as required by law. **Defendant hereby demands a trial by Jury.**

2.2.    Defendant, Hartford Lloyds Insurance Company, specifically denies the Plaintiffs have fully complied with all conditions precedent as set forth in their policy of insurance under which they make claim prior to bringing suit.

2.3    Pleading in the alternative, Plaintiffs were guilty of various acts, wrongs, and omissions, each of which constituted breach of contract, negligence, negligence per se, gross negligence, comparative fault and comparative responsibility, and each on which was the sole cause or alternatively, a proximate cause and producing cause of the occurrence in question and the alleged damages.

2.4    Defendant specifically denies violating any Texas Statute in the handling of Plaintiffs' claim and denies it is liable for any statutory penalty or attorney's fees.

# CERTIFIED COPY

2.5    In response to Plaintiffs' claims for exemplary damages, Defendant states that at
no time was it consciously indifferent to Plaintiffs' claims, nor was it actually aware
of any extreme risk of harm to Plaintiffs.

2.6    Pleading in the alternative, without waiving the foregoing defenses, Defendant
contends that any delay, if any, occurring in connection with Plaintiffs' claim for
benefits was caused by the failure of Plaintiff and/or their counsel to allow for an
inspection of their home and submit requested information and/or submit to an
examination under oath when requested pursuant to the terms and conditions of
their policy of insurance.

2.7    Pleading in the alternative, this Defendant would state that no act, omission,
conduct or ratification of any vice-principal rose to the level of gross negligence,
actual conscious indifference or malice, which would give rise to the imposition of
punitive or exemplary damages.  This Defendant hereby pleads and invokes the
dollar limitations and provisions of Texas law and the Texas Civil Practice &
Remedies Code regarding the limitations of recovery of exemplary damages.

2.8    Pleading in the alternative, Defendant would state that to the extent that Plaintiffs
have sustained any damages, Plaintiffs failed to take timely, proper and reasonable
steps to mitigate their damages, if any.

2.9    Pleading in the alternative, Defendant would state that the actions of Plaintiffs
and/or their counsel or "experts" have led to a spoliation of evidence.

# CERTIFIED COPY

2.10    Pleading in the alternative, Defendant would state that any claims made by Plaintiffs are excluded from coverage under their policy of insurance (which is attached as Exhibit "A", and is incorporated fully herein as if set forth verbatim.)

## 3.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

3.1.    Hartford Lloyds, Defendant/Counter-Plaintiff, petitions this Court pursuant to the Declaratory Judgments Act, Civil Practice and Remedies Code § 37.001 et seq., for a determination regarding the insurance policy at issue in this matter (attached as Exhibit "A",) and a declaration that it has no duty to provide insurance benefits to Counter-Defendants/Plaintiffs James Rowe and Carrie Lee Rowe and in support thereof would show:

3.2    On or about May 8, 2000, Counter-Defendants/Plaintiffs Rowes made a claim under their homeowner's policy of insurance, policy number 65 RB 923451, for alleged water damage  to their home located at 702 East Bowie, Harlingen, Cameron County, Texas.

3.3    From on or about May 8, 2000 through date hereof, Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company by and through its agents repeatedly attempted to inspect Counter-Defendants/Plaintiffs Rowes' home located at 702 East Bowie, Harlingen, Cameron County, Texas.

3.4    Counter-Defendants/Plaintiffs Rowes personally and/or through their counsel failed and/or refused to allow Counter-Plaintiff/Defendant Hartford Lloyds Insurance

Defendant's Plea in Abatement, Original Answer
and Counterclaim for Declaratory Relief        - 5 -

# CERTIFIED COPY

Company to adequately inspect the home.  Such refusal to allow access to the home is in direct violation of Counter-Defendants/Plaintiffs Rowes' policy of insurance.

3.5    This action prevented Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company from performing an adequate investigation and taking any steps to make reasonable and necessary repairs to the property and prevent additional damages. As such, Counter-Defendants/Plaintiffs Rowes are in breach of their contract of insurance.   Therefore, Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company seeks a determination and declaration from this Court that it is not required to comply with any terms and conditions of the policy of insurance (such as continuing efforts to timely investigate the claims, payment) and/or any duties pursuant to the Texas Insurance Code.

3.6    Further. Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company would state that any claims made by Counter-Defendants/Plaintiffs Rowes are excluded from coverage under their policy of insurance and therefore Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company requests that this court make a determination that Counter-Defendants/Plaintiffs Rowes are precluded from moving forward with their claims.

3.7    Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company has retained the firm of Barker, Leon, Fancher & Matthys, L.L.P., to represent Counter-Plaintiff/Defendant in this action and has agreed to pay the firm a reasonable and necessary attorney's fee. An award of reasonable and necessary attorney's fees

# CERTIFIED COPY

to the Counter-Plaintiff/Defendant would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

3.8    For these reasons, Counter-Plaintiff/Defendant Hartford Lloyds Insurance Company requests that on final trial, it have the following relief:

1. Judgment declaring that Hartford Lloyds has no duty to comply with any terms and conditions of policy of insurance policy number 65 RB 923451

2. Attorney's fees.

3. Costs of suit.

4. Such other and further relief to which the plaintiff may be justly entitled.

## 4.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, HARTFORD LLOYDS INSURANCE COMPANY prays that upon a final hearing hereof, this case is abated, and in its entirety referred to the appraisal process for final resolution; that in the alternative, Plaintiffs recover nothing of and from Defendant and that the Court enter a judgment that Defendant go hence without day with all costs of Court and attorneys fees as well as expenses incurred herein; Defendant requests such appropriate relief pursuant to its counterclaim for declaratory judgment, for all such further relief, general, special, legal, and equitable which might be appropriate.

## CERTIFIED COPY

Respectfully submitted,

**BARKER, LEON, FANCHER
& MATTHYS, L.L.P.**
Tower II - Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

F. Edward Barker
State Bar No. 01741000
**ATTORNEYS FOR DEFENDANT
HARTFORD LLOYDS
INSURANCE COMPANY**

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT-CAMERON COUNTY, TEXAS
DATE
BY _____ DEPUTY

# CERTIFIED COPY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served in accordance with the Texas Rules of Civil Procedure on this the 22nd day of March _____, 2002, to all counsel of record as follows:

**VIA CM/RRR # 7001 1940 0005 0833 6704**
Mr. Reynaldo Ortiz
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504

**VIA CM/RRR # 7001 1940 0005 0592 7868**
Mr. David E. Kithcart
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447

F. Edward Barker

Sent By: BARKER LEON FANCHER MATHYS;        3618829437;        22 Mar 02  5:42PM;Job 581;Page 12/32
03/22/2002 16 32 FAX

# CERTIFIED COPY

### VERIFICATION

STATE OF TEXAS            §
COUNTY OF BEXAR           §

On this day MICHAEL PAXTON personally appeared before me, the undersigned Notary Public, and after being duly sworn stated under oath that He is the duly authorized representative for Defendant Hartford Lloyds Insurance Company in this action; that he has read the above plea in abatement, answer and counterclaim for declaratory judgment and that every statement contained in the plea in abatement, answer and counterclaim for declaratory judgment is within her personal knowledge and is true and correct.

_____
Duly authorized representative for
Hartford Lloyds Insurance Company

SUBSCRIBED AND SWORN TO BEFORE ME on MARCH 19 TH, 2002

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

ARTHUR J. SCUDDER
MY COMMISSION EXPIRES
July 1, 2002

10

Sent By: BARKER LEON FANCHER MATHYS;     3618829437;     22 Mar 02   5:42PM;Job 561;Page 13/32

# QUICK REFERENCE
# TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ............................................. 1
Definitions ...................................................... 1
SECTION I - PROPERTY COVERAGE
Coverage A
    Dwelling ...................................................... 2
    Other Structures ............................................. 2
Coverage B
    Personal Property ............................................ 2
    Personal Property Off Premises ............................... 2
Special Limits of Liability ...................................... 2
Property Not Covered ............................................ 3
Extensions of Coverage
    Debris Removal ............................................... 3
    Loss of Use .................................................. 3
    Reasonable Repairs ........................................... 3
    Trees, Shrubs, Plants and Lawns .............................. 4
    Property Removed ............................................. 4
    Consequential Loss ........................................... 4
    Automatic Removal ............................................ 4
Perils Insured Against
    Coverage A (Dwelling) ........................................ 4
    Coverage B (Personal Property) ............................... 4
Exclusions ....................................................... 5
Deductible ....................................................... 6
Section I Conditions
    Insurable Interest and Limit of Liability .................... 7
    Residential Community Property Clause ........................ 7
    Duties After Loss
        Your Duties After Loss ................................... 7
        Our Duties After Loss .................................... 8
    Loss Settlement .............................................. 8
    Loss to a Pair or Set ........................................ 9
    Salvage Rights ............................................... 9
    Appraisal .................................................... 9
    Loss Payment ................................................. 9
    Catastrophe Claims ........................................... 9
    Other Insurance .............................................. 10
    Suit Against Us .............................................. 10
    Abandonment of Property ...................................... 10
    Vacancy-Suspension of Coverage ............................... 10
    Mortgage Clause .............................................. 10
    No Benefit to Bailee ......................................... 11
SECTION II - LIABILITY COVERAGE
Coverage C (Personal Liability) .................................. 11
Coverage D (Medical Payments to Others) .......................... 11
Exclusions
    Coverage C and D Exclusions .................................. 11
    Coverage C Exclusions ........................................ 13
    Coverage D Exclusions ........................................ 13
Additional Coverages
    Claim Expenses ............................................... 13

Imperative Medical Expenses to Others ............ 14
Damage to Property of Others ..................... 14
Section II Conditions
    Limit of Liability ........................................... 14
    Severability of Insurance .................................... 14
    Duties After Loss ............................................ 14
    Duties of an Injured Person .................................. 14
    Payment of Claim Under Coverage D ............................ 15
    Suit Against Us .............................................. 15
    Bankruptcy of the Insured .................................... 15
    Other Insurance .............................................. 15
    Notice of Settlement of Liability Claim ...................... 15

POLICY CONDITIONS
APPLYING TO SECTIONS I AND II

Policy Period .................................................... 15
Concealment or Fraud ............................................. 15
Liberalization Clause ............................................ 15
Waiver or Change of Policy Provisions ............................ 15
Cancellation ..................................................... 16
Refusal to Renew ................................................. 16
Assignment ....................................................... 16
Subrogation ...................................................... 16
Death ............................................................ 16

---

## YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

Section II:

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES 7 AND 14 OF YOUR POLICY

---

Prescribed by the State Board of Insurance
Homeowners Form B - Effective July 5, 1992
(Revised January 1, 1998)





HARTFORD INSURANCE

Sent By: BARKER LEON FANCHER MATHYS;        3618829437;        22 Mar '02  5:43PM;Job 581;Page 14/32

# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Business day", when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. "Insured" means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, "insured" also means:

   c. any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an insured.

   d. With respect to any vehicle to which this policy applies:

      (1) any employee of an insured while engaged in the employment of the insured; or

      (2) any other person using the vehicle on an insured location with your consent.

5. "Insured location" means:

   a. the residence premises.

   b. the part of other premises, other structures and grounds you use as a residence and:

      (1) which is shown on the declarations page; or

      (2) which you acquire during the policy period for your use as a residence.

   c. any premises you use in connection with a premises in 5.a. or 5.b. above.

   d. any part of a premises:

      (1) not owned by an insured; and

      (2) where an insured is temporarily residing.

   e. vacant land, other than farm land, owned by or rented to an insured.

   f. land owned by or rented to an insured on which a one or two family dwelling is being built as a residence for an insured.

   g. individual or family cemetery plots or burial vaults of an insured.

   h. any part of a premises occasionally rented to an insured for other than business use.

6. "Occurrence" means an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period.

7. "Property damage" means injury to, destruction of, or loss of use of property.

8. "Residence employee" means an employee of an insured who performs duties related to the ownership, maintenance or use of the residence premises, including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an insured. This does not include employees while performing duties related to the business of an insured.

Form B                                    1

04/15 '01 09:59 NO.501 02/14

HARTFORD INSURANCE

9.  "**Residence premises**" means the **residence premises** shown on the declarations page  This includes the one or two family dwelling, including other structures, and grounds where an insured resides or intends to reside within 60 days after the effective date of this policy.

## SECTION I - PROPERTY COVERAGE

### COVERAGE A (DWELLING)

**We cover:**

1.  the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling

2.  other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

    The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

    We do not cover other structures:

    a.  used for business purposes; or

    b.  wholly rented to any person, unless used solely as a private garage.

3.  wall to wall carpeting attached to a building on the **residence premises.**

### COVERAGE B (PERSONAL PROPERTY)

**We cover:**

1.  a.  personal property owned, worn or used by an **insured** while on the **residence premises.** This includes window or wall air conditioning units.

    b.  at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured.**

2.  a.  personal property owned, worn or used by an **insured** anywhere in the world.

    b.  at your request, personal property of a **residence employee** when:

    (1)  the property is away from the residence premises of the **residence employee** and in the control of the **residence employee;** and

    (2)  while the **residence employee** is performing work for you

    Our total limit of liability under item 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category

1.  Money/Bank Cards. $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured.**

2.  Bullion/Valuable Papers. $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports documents, transportation or other tickets.

3.  Jewelry/Watches/Furs. $500 for loss by theft of gems, watches, jewelry or furs.

4.  **Business** Personal Property.  $2,500 on **business** property.

    We do not cover any **business** property:

    a.  that consists of samples or articles for sale or delivery; or

b.   if the property is away from the **residence premises.**

**PROPERTY NOT COVERED.** We do not cover.

1.   articles separately described and specifically insured by this or other insurance.

2.   animals or birds.

3.   motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

However, we do cover such vehicles which are not subject to motor vehicle registration and are.

   a.   devices and equipment for assisting the handicapped.

   b.   power mowers.

   c.   golf carts.

   d.   vehicles or machines used for recreational purposes while located on the **residence premises.**

   e.   farm equipment not designed for use principally on public roads.

4.   trailers, semi-trailers or mobile homes.

However, we do cover:

   a.   trailers and semi-trailers that are designed for use principally off public roads.

   b.   boat trailers while on the **residence premises.**

5.   aircraft meaning any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

6.   watercraft, including outboard motors and furnishings or equipment.

We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the **residence premises.**

7.   property of roomers or tenants.

8.   property usually rented to others off the **residence premises.**

**EXTENSIONS OF COVERAGE.**

1.   **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

   a.   debris of covered property if a Peril Insured Against causes the loss.

   b.   a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

This does not increase the limit of liability that applies to the damaged property.

2.   **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable, we cover:

   a.   additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

   b.   fair rental value, meaning the fair rental value of that part of the **residence premises** usually rented to others by you, less any expenses that do not continue.

The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3.   **REASONABLE REPAIRS.** If a Peril Insured Against caused the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4   TREES, SHRUBS, PLANTS AND LAWNS. We cover trees, shrubs, plants and lawns, on the **residence premises**, only for loss caused by the following Perils Insured Against: Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5   PROPERTY REMOVED. We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6.   CONSEQUENTIAL LOSS. We insure:

  a   property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

  b   property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

  The total limit of liability for the coverage described in 6 b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7   AUTOMATIC REMOVAL. If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

  a   the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

  b   property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I   PERILS INSURED AGAINST

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling), unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1.   Fire and Lightning.

2.   Sudden and Accidental Damage from Smoke.

3   Windstorm, Hurricane and Hail.

4   Explosion.

5   Aircraft and Vehicles.

6   Vandalism and Malicious Mischief.

Form 8                                4

Sent By: BARKER LEON FANCHER MATHYS;        3618829437;        22 Mar'02  5:44PM;Job 581;Page 16/32

7.  **Riot and Civil Commotion.**
8.  **Collapse of Building** or any part of the building.
9.  **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

    A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

    Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.
10. **Falling Objects.**

    This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.
11. **Freezing** of household appliances.
12. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

## SECTION I EXCLUSIONS

1.  The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

    a.  We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

    b.  We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

    c.  We do not cover loss caused by windstorm, hurricane or hail to:

        (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

        (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

        (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

    d.  We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

        (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured,** except while an **insured** is temporarily living there.

        (2) building materials and supplies not on the **residence premises.**

    e.  We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

    f.  We do not cover loss caused by:

        (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

        (2) rust, rot, mold or other fungi.

        (3) dampness of atmosphere, extremes of temperature.

        (4) contamination.

        (5) rats, mice, termites, moths or other insects.

        We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

04/13 '01 09:39 NO.307    04/13 '01 09:39 NO.307 06/14                HARTFORD INSURANCE

g.  We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises.**

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

h.  We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

i.  We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j.  We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

(1)  maintain heat in the building; or
(2)  shut off the water supply and drain plumbing, heating and air conditioning systems of water.

k.  We do not cover loss caused by earthquake, landslide or earth movement.

2.  **GOVERNMENTAL ACTION.**

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy

3.  **BUILDING LAWS.**

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure

4.  **WAR DAMAGE.**

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and any consequence of these Discharge of a nuclear weapon will be deemed a warlike act even if accidental

5.  **NUCLEAR DAMAGE.**

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination

---

## SECTION I DEDUCTIBLE

**DEDUCTIBLE CLAUSE 1 - WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN** - The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 - ALL OTHER PERILS** - The amount shown on the declarations page for Deductible Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

Form 8                                6

Sent By: BARKER LEON FANCHER MATHYS;      3618829437;      22 Mar '02  5:45PM;Job 581;Page 20/32

# SECTION I CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

   Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

   Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Duties After Loss.**

   **Your Duties After Loss.** In case of a loss to covered property caused by a Peril Insured Against, you must:

   (1) give prompt written notice to us of the facts relating to the claim.

   (2) notify the police in case of loss by theft.

   (3) (a) protect the property from further damage.

       (b) make reasonable and necessary repairs to protect the property.

       (c) keep an accurate record of repair expenses.

   (4) furnish a complete inventory of damaged personal property showing the quantity, description, amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

   (5) as often as we reasonably require:

       (a) provide us access to the damaged property.

       (b) provide us with pertinent records and documents we request and permit us to make copies.

       (c) submit to examination under oath and sign and swear to it.

   (6) send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

       (a) This proof of loss shall state, to the best of your knowledge and belief:

           (i) the time and cause of loss.

           (ii) the interest of the **insured** and all others in the property involved including all liens on the property.

           (iii) other insurance which may cover the loss.

           (iv) the actual cash value of each item of property and the amount of loss to each item.

       (b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

HARTFORD INSURANCE

(i)    the replacement cost of the described dwelling.

(ii)   the replacement cost of any other building on which loss is claimed.

(iii)  the full cost of repair or replacement of loss without deduction for depreciation.

b. **Our Duties After Loss.**

(1) Within 15 days after we receive your written notice of claim, we must:

    (a)   acknowledge receipt of the claim.

    If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

    (b)   begin any investigation of the claim.

    (c)   specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a above).

    We may request more information, if during the investigation of the claim such additional information is necessary.

(2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

    (a)   within 15 business days; or

    (b)   within 30 days if we have reason to believe the loss resulted from arson.

(3) If we do not approve payment of your claim or require more time for processing your claim, we must

    (a)   give the reason for denying your claim, or

    (b)   give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4. **Loss Settlement.** Covered property losses are settled as follows:

a. Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

    (1)   the actual cash value at the time of loss determined with proper deduction for depreciation;

    (2)   the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation, or

    (3)   the specified limit of liability of the policy.

b. Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awnings and fences, will be at replacement cost settlement subject to the following:

    (1)   If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

    (2)   If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

$$\frac{\text{Replacement Cost of the Loss}}{80\% \text{ of Replacement Cost of the Dwelling}} \times \text{Coverage A (Dwelling) Limit of Liability}$$

    (3)   If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following:

(1)   the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(2)   the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3)   the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5.   **Loss to a Pair or Set.** In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6.   **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7.   **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

a     the full replacement cost of the dwelling.

b.    the full replacement cost of any other building upon which loss is claimed.

c.    the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8    **Loss Payment.**

a.    If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

b    If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9.   **Catastrophe Claims.**

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a     is delcared a disaster under the Texas Disaster Act of 1975; or

b.    is determined to be a catastrophe by the State Board of Insurance.

Sent By: BARKER LEON FANCHER MATHYS;    3618829437;    22 Mai -02  5:46PM;Job 581;Page 26/32

10. **Other Insurance – Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

   a. The word "mortgagee" includes trustee.

   b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

   c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

   (1) at our request, pays any premiums due under this policy, if you have failed to do so.

   (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

   (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

   All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

   e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) the mortgagee's rights under the mortgagee will be transferred to us to the extent of the amount we pay.

   (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   f. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

   If you cancel the policy, we will give the mortgage notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

   g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

04/15 '01 09:40 NO.501  11/1                              HARTFORD INSURANCE

h.   If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

## SECTION II LIABILITY COVERAGE

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.   pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include pre-judgement interest awarded against the **insured;** and

2.   provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments To Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury.**   Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to **residence employees.** As to others, this coverage applies only:

1.   to a person on the **insured location** with the permission of an **insured.**

2.   to a person off the **insured location,** if the **bodily injury:**

   a.   arises out of a condition on the **insured location** or the ways immediately adjoining.

   b.   is caused by the activities of an **insured.**

   c.   is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured.**

   d.   is caused by an animal owned by or in the care of an **insured.**

## SECTION II EXCLUSIONS

1.   **COVERAGE C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

   a.   **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured;**

   b.   **bodily injury** or **property damage** arising out of or in connection with a **business** engaged in by an **insured.** But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c.   **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location:**

     (1)   on an occasional basis if used only as a residence.

     (2)   in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

     (3)   in part, as an office, school or studio

     (4)   if the rental is for not more than three car spaces or stalls in garages or stables

   d.   **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services

   e.   **bodily injury** or **property damage** arising out of a premises:

     (1)   owned by an **insured;**

     (2)   rented to an **insured;** or

     (3)   rented to others by an **insured:**

that is not an **insured location.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

f   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1)   motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

(2)   trailers, semi-trailers or mobile homes;

which are owned or operated by or rented or loaned to an **insured.**

However, this exclusion does not apply to:

(1)   motor vehicles which are not subject to motor vehicle registration and are:

(a)   used for assisting the handicapped,

(b)   used to service an **insured location,**

(c)   golf carts while on the **residence premises** or used for golfing purposes

(d)   designed and used for recreational purposes, and are

(i)   not owned by an **insured**; or

(ii)   owned by an **insured** while on the **residence premises.**

(e)   in dead storage on the **residence premises.**

(f)   used exclusively on the **residence premises.**

(2)   trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

g.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1)   with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured.**

(2)   powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured.**   But, outboard motors of more than 25 total horsepower are covered for the policy period if

(a)   you acquire them prior to the policy period and:

(i)   you declare them at policy inception; or

(ii)   your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(b)   you acquire them during the policy period.

(3)   that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured.**

This exclusion does not apply while the watercraft is on the **residence premises.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

h.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft:

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

**bodily injury** or **property damage** arising out of:

(1)   the entrustment by an **insured** to any person, or

(2)   the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured.

j.  bodily injury or property damage caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.  bodily injury or property damage arising out of the transmission of sickness or disease by an insured through sexual contact.

l.  bodily injury to any person eligible to receive any benefits voluntarily provided or required to be provided by an insured under any workers' compensation law or occupational disease law.

2.  Coverage C (Personal Liability) does not apply to:

a.  liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

(1)  that directly relate to the ownership, maintenance or use of an insured location; or

(2)  where the liability of others is assumed by an insured;

unless excluded elsewhere in this policy.

b.  property damage to property owned by an insured.

c.  property damage to property rented to, occupied or used by or in the care of the insured.

This exclusion does not apply to property damage caused by fire, smoke or explosion.

d.  bodily injury or property damage for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e.  bodily injury to you or an insured within the meaning of part a. or part b. of insured as defined.

3.  Coverage D (Medical Payments to Others) does not apply to:

a.  bodily injury to a residence employee if the bodily injury:

(1)  occurs off the insured location; and

(2)  does not arise out of or in the course of the residence employee's employment by an insured.

b.  bodily injury to any person, other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1.  Claim Expenses. We pay:

a.  expenses we incur and costs taxed against an insured in any suit we defend.

b.  premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

c.  reasonable expenses incurred by an insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

Form 8                                    13

d.   interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.   **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others if imperative at the time of the accident.

3.   **Damage to Property of Others.** We pay replacement cost up to $500 per **occurrence** for **property damage** to property of others caused by an **insured.**

We do not pay for **property damage:**

a.   caused intentionally by an **insured** who is 13 years of age or older.

b.   to property owned by an **insured.**

c.   to property owned by or rented to a tenant of an **insured** or a resident in your household.

d.   arising out of:

(1)   a **business** engaged in by an **insured.**

(2)   any act or omission in connection with a premises owned, rented or controlled by an **insured,** other than the **insured location.**

(3)   the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured.**

## SECTION II CONDITIONS

1.   **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence.** This limit is the same regardless of the number of **insureds,** claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for **bodily injury** to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2.   **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3.   **Duties After Loss.** In case of an accident or **occurrence,** the **insured** will perform the following duties that apply or will help us by seeing that these duties are performed:

a.   Give written notice to us or our agent as soon as is practical, which sets forth:

(1)   the identity of the policy and **insured,**

(2)   reasonably available information on the time, place and circumstances of the accident or **occurrence.**

(3)   names and addresses of any claimants and witnesses.

b.   Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence.**

c.   At our request, help us:

(1)   to make settlement.

(2)   to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured.**

(3)   with the conduct of suits, including attending hearings and trials.

(4)   to secure evidence and obtain the attendance of witnesses.

d.   The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the **bodily injury.**

4.   **Duties of an injured Person – Coverage D (Medical Payments to Others).**

The injured person or someone acting for the injured person will:

Form 8                                                   14

Sent By: BARKER LEON FANCHER MATHYS;        3618829437;        22 Mar 02   5:48PM;Job 561;Page 28/32

a. give us written proof of claim, under oath if required, as soon as is practical.
b. authorize us to obtain copies of medical reports and records.
The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. Payment of Claim - Coverage D (Medical Payments to Others). Payment under this coverage is not an admission of liability by an insured or us.

6. Suit Against Us. No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an insured. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the insured has been determined by final judgment or agreement.

   Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7. Bankruptcy of the Insured. Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

8. Other Insurance - Section II. If the insured has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

   However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

   a. any motor vehicle or recreational motor vehicle at the residence premises; or
   b. watercraft,

   this policy will not apply to the extent that any valid and collectible insurance is available to the insured.

9. Notice of Settlement of Liability Claim.

   a. We will notify the insured in writing of any initial offer to compromise or settle a claim against the insured under the liability section of this policy.
   We will give the insured notice within 10 days after the date the offer is made.

   b. We will notify the insured in writing of any settlement of a claim against the insured under the liability section of this policy. We will give the insured notice within 30 days after the date of the settlement

## SECTION I AND II CONDITIONS

1. Policy Period. This policy applies only to loss in Section I or bodily injury or property damage in Section II which occurs during the policy period stated on the declarations page.

2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3. Liberalization Clause. If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4. Waiver or Change of Policy Provisions. Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

5. Cancellation.

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

Form 8                                            15

M. Forest Nelson
State Bar No. 14904625
S.D.ID 5934
BURT BARR & ASSOCIATES, L.L.P.
304 South Record
Dallas, Texas 75202-4793
214/742-8001 (Telephone)
214/741-6744 (Telecopier)

United States District Court
Southern District of Texas
FILED

APR 0 4 2002

Michael N. Milby
Clerk of Court

ATTORNEYS FOR NATIONAL CASUALTY COMPANY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARMANDO R. VILLALOBOS | § | CIVIL ACTION NO. B -02-33 |
| | § | |
| | § | |
| VS. | § | CERTIFICATE OF AFFILIATES |
| | § | |
| NATIONAL CASUALTY COMPANY | § | |

CERTIFICATE OF AFFILIATED PARTIES

Pursuant to this Court's order, plaintiff, National Casualty Company (National) files this certificate of affiliates:

1.    National is a member of the Nationwide Group of Insurance Companies, which includes:

A.    Nationwide Insurance Company:

B.    Scottsdale Insurance Company;

C.    Farmland Insurance Company; and

D.    Colonial County Mutual Insurance Company.

Respectfully submitted,

BURT BARR & ASSOCIATES, L.L.P.

By: _____

M. FOREST NELSON
State Bar No.  14904625
S.D. ID. 5934
304 South Record Street
Dallas, Texas 75202
(214) 742-8001
Telefax:  (214) 741-6744

ATTORNEYS FOR NATIONAL CASUALTY COMPANY

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing certificate of affiliates was served upon the below counsel of record pursuant to FRCP 5 through regular U.S. Mail on April 2, 2002:

Henley & Henley, P.C.
Geoff J. Henley
2205 N. Henderson Avenue
Dallas, Texas 75206-6002

_____

M. Forest Nelson

b. We may cancel this policy only for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

  (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

  The effective date of cancellation cannot be before.

    (a) the 10th day after we mail notice if we cancel for non-payment of premium.

    (b) the 30th day after we mail notice if we cancel for any reason.

  (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

    (a) you do not pay the premium or any portion of the premium when due.

    (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    (c) you submit a fraudulent claim.

    (d) there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

  The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d. We may not cancel this policy solely because you are an elected official.

6. **Refusal to Renew.**

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy because you are an elected official.

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below

If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of our refusal to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice If we fail to give you proper notice of our decision not to renew, you may require us to renew this policy.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If the named insured dies, we insure:

a. the named insured's spouse, if a resident of the same household at the time of death.

b. the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

c. any person who is an **insured** at the time of such death, while a resident of said premises



**THE HARTFORD**

01/28/02

Dr. James & Carrie Rowe
702 E. Bowie
Harlingen, TX 78550

RE:    Claim:    YAZ DP 05836
       Date:     05/08/2000
       Type:     Water
       Policy:   65 RB 923451

Dear Dr. Rowe

       Confirming the findings of our meeting 01/17/02. It is understood that we have not yet agreed on a scope of loss. The Hartford's Investigation has revealed an extent of damage that is significantly less than that of your representative, Mr. Brock Thomas.

Please be advised, that it is the opinion of The Hartford, that the scope of damage has been discovered to the extent possible and does not include a many of the items stated as necessary by your "expert" without so much as an air quality test.

The Hartford therefore notifies you, that according to the provisions of your policy, number 65 RB 923451, it will invoke the appraisal clause as listed below.

**Section 1 – Conditions**

7. Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of the loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraiser will also set:

     a.  The full replacement cost of the dwelling.
     b   The full replacement cost of any other building upon which loss is claimed
     c.  The full cost of repair or replacement of loss to such building, without deduction for depreciation.



San Antonio Personal Lines
Claims Office
P.O. Box 47511
San Antonio, TX 78265
Telephone 1 800 236 0398

Sent By: BARKER LEON FANCHER MAlnrS;      3618829437;      22 Mar  02  3.43rm;uuo  uo/;rage 01/02



THE
HARTFORD

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

Mr. Robert Moore of Associated Appraisal Services has been designated as our expert. Mr. Moore can be reached by phone at (210)-923-9714. The address of Associated Appraisal Service is 4400 Piedras Dr. South, San Antonio TX 78228

Should you have any question regarding this process, please feel free to contact me at the number listed below.


Sincerely



Paul Gamache
Property Claims Specialist

San Antonio Personal Lines
Claims Office
P.O. Box 47511
San Antonio, TX 78265
Telephone 1 800 236 0398

Sent By: BARKER LEON FANCHER MA. .9;

Ms. Aurora De La Garza
District Clerk - Cameron County
Cameron County Courthouse
Page 2

cc:    **VIA CM/RRR # 7001 1940 0005 0833 6704 and via fax (956) 631-1384**
       Mr. Reynaldo Ortiz
       LAW OFFICE OF REYNALDO ORTIZ, P.C.
       1109 W. Nolana, Suite 204
       McAllen, Texas 78504


       **VIA CM/RRR # 7001 1940 0005 0592 7868 and via fax (956) 440-1235**
       Mr. David E. Kithcart
       ROUNDTREE & KITHCART, L.L.P.
       222 East Van Buren, Suite 101
       P.O. Box 2447
       Harlingen, Texas 78551-2447