10

United States District Court
Southern District of Texas
FILED

MAY 2 8 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES ROWE AND | § | |
| CARRIE LEE ROWE | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-64 |
| | § | |
| HARTFORD LLOYD'S | § | |
| INSURANCE COMPANY | § | **"JURY"** |

## DEFENDANT HARTFORD LLOYD'S INSURANCE COMPANY'S PLEA IN ABATEMENT AND MOTION TO REFER THIS CAUSE TO BINDING APPRAISAL

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Defendant, Hartford Lloyd's Insurance Company, hereafter "Hartford," in the above-styled and numbered cause, and files this their Brief Regarding Binding Appraisal, and in support thereof would show the Court as follows:

### 1. Factual Background

This suit involves the alleged nonpayment of the amounts demanded by Plaintiffs for water leakage claims in plaintiffs' home, which allegedly caused mold. In 1990, Plaintiffs purchased their home at 702 East Bowie, Harlingen, Texas 78550. On January 7, 1991, Plaintiffs and Hartford entered into a contractual agreement, hereinafter referred to as the "policy," regarding this residence. A true and correct copy of insurance policy number 65 RB 923451 is attached hereto as Appendix "A." On May 8, 2000, Plaintiffs reported a swimming pool leak and a leak in the plumbing system located in their daughter's bathroom.

---

Plumbing work was completed regarding these claims. On March 15, 2001, Hartford hand-delivered a check to Plaintiffs in the amount of $ 4,735.06, for the homeowners' loss, less their deductible. Soon after, Plaintiffs had reported to them by a contractor that a toxic form of mold was in the house. On April 25, 2001, plaintiffs received from Hartford a payment in the amount of $ 7,092.88 as a down payment on a plumbing reroute cost of $14,185.75. Numerous transactions later occurred resulting in the Plaintiff hiring a Mr. Brock Thomas as Plaintiffs' Independent Adjuster, mold expert and general contractor. Mr. Thomas gave, what Hartford regarded as an outrageous estimate for repairs to Plaintiffs' home.

On the 28th day of January, 2002, Defendant, Hartford Lloyds Insurance Company accepted coverage but invoked the mandatory appraisal provisions of the insurance contract between the parties. This provision states as follows:

> If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge or a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. . . . **If the appraisers fail to agree, they will submit their differences to the umpire.** An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. **Such award shall be binding on you and us.** [emphasis supplied]

See Appendix A, page 9.

## 2.  Legal Authority

Plaintiffs, upon receiving Defendant's demand for appraisal ignored same, breached their contact and filed suit. An "appraisal" is in the nature of a binding arbitration.  It is well established that federal courts favor enforcement of contractual agreements between private parties to arbitrate. *See*, *Volt Info. Sciences vs. Board of Trustees,* 489 U.S. 468 (U.S. Sup. Ct. 1989)  (stating that federal courts' policy regarding contracts is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate"); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477,  481 (1989) (noting the Court's rejection of generalized attacks on arbitration that rest on ""suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants"); *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.,*460 U.S. 1, 24 (1988) (noting that invalidating agreement would undermine  federal policy favoring arbitration agreements); *cf.* 9 U.S.C. §§ 2 (providing that ""[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract).

## 3.  ANALYSIS AND CONCLUSION

The appraisal provision at issue and described herein above, is analogous to a contractual arbitration provision, in that the parties to the contract agree to resolve their disputes outside of judicial proceedings through a neutral party.  Federal courts have a long-standing policy of honoring and enforcing arbitration agreements. Like arbitration, Defendant Hartford Lloyds Insurance Company urges this Court to honor the contractual appraisal provision at issue, which governs the resolution of disputes between the parties

regarding the value of the loss, and abate all judicial proceedings until the appraisal process is completed at which time its results will be provided to the court for its approval and enforcement.

## 4. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Hartford Lloyd's Insurance Company respectfully requests the Court to Grant Defendant's Plea in Abatement in the above styled and entitled cause and refer this matter to a binging appraisal process.

Respectfully submitted,

F. Edward Barker
State Bar No. 01741000
Federal I.D. No. 970
Attorney-in-Charge for Defendant
Hartford Lloyd's Insurance Company
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
(361) 881-9217; FAX: (361) 882-6590

OF COUNSEL:
BARKER, LEON, FANCHER & MATTHYS,
L.L.P.

## CERTIFICATE OF SERVICE

I, F. Edward Barker, certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record, in the manner set forth below, on this the 24 day of May, 2002.

**Via Certified Mail/RRR No. 7001 1940 0005 0834 1432**
Mr. Reynaldo Ortiz
LAW OFFICE OF REYNALDO ORTIZ, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504

**Via Certified Mail/RRR No. 7001 1940 0005 0834 1449**
Mr. David E. Kithcart
ROUNDTREE & KITHCART, L.L.P.
222 East Van Buren, Suite 101
P.O. Box 2447
Harlingen, Texas 78551-2447

F. Edward Barker

## CERTIFICATE OF CONFERENCE

On May 23, 2002, the undersigned attempted to confer with Plaintiffs' counsel as to whether or not Plaintiffs' counsel would oppose or not the Defendant's Plea in Abatement and Motion to Refer this cause to the appraisal process as authorized by the insurance contract between the parties. All of Plaintiffs' counsel were reported to be out of their offices until Tuesday, May 28, 2002. Contact was therefore attempted but unsuccessful. It is likely that Plaintiffs would oppose Defendant's Plea in Abatement and Motion to Refer this cause to binding appraisal.

F. Edward Barker



# The Hartford

I, <u>Maria E. Serrano</u>, certify that the attached is a true and representation of

Policy number :    <u>65   RB   923451</u>

Effective :     <u>05-08-00</u>

Issued by :    <u>Hartford Lloyd's Insurance Company</u>

_Maria E Senaro_

**SIGNATURE**

**STATE OF TEXAS**

**COUNTY OF BEXAR**

Before me personally appeared, <u>Maria E. Serrano</u>, to me well known and known to be the person described in and who
executed the foregoing instrument, and acknowledge to and before me that, <u>Maria E. Serrano</u>, executed said
instrument for the purposes therein expressed.

Witness my hand and official seal, this <u>_15TH_</u> day of <u>_MARCH_</u> A. D., 2002



ARTHUR J. SCUDDER
MY COMMISSION EXPIRES
July 1, 2002

_Arthur J Scudder_
**Notary Public**
**State of Texas**

My commission expires     <u>7/1/2002.</u>

San Antonio Personal Lines
Claims Office
P.O. Box 47511
San Antonio, TX 78265
Telephone 1 800 236 0398

```
1      POL #    PROD   SUB SHT CO ST EFF     EXP     TERM PF RNST REI STAT AS OF
    65RB 923451 811782      ROW B  TX 010700 010701 12     1      A   010700
                AGY TRAN ORIG        C/S INFO
    PRV POL #   PROD   IN POL DT TX CD RO PROD   ACT CH# EFF    DT PRC  REQ
    65RB 923451         010791             AREN   010700 111899 MICROFILM
    CR  -UNDERWRITER- PRIM     D AGY                              TYPE 08
    RPT INIT TERR CDS POL #    T PROF LCL MIUA COMBO W/F LTERM    RE U/W CODES
     2  001 9Z              P              B       SYSTEM
0     NAME ROWE JAMES D & CARRIE LEE
    STREET 702 EAST BOWIE                       CITY HARLINGEN
      CNTY CAMERON              ST TX  ZIP 78550       PLACE CD 06122
    IF DIFF FROM MAIL ADDR         POOL ID 16   CK RCVD        RENIE SQ
    RES ADDR                                                   RSN
    CITY/CNTY                              ST     ZIP
    ADDL RES PREMISES
    STREET                               # OF FAM          TERR
      CITY                    CNTY              ST    ZIP
0        OTHER      PERS     LOSS OF    PERS      MED PAY/ MINN/SC
    DWLG      STRUCT     PROP     USE      LIAB      PERSON   VALUE
    $ 157,000 $ 15,700 $ 94,200 $ 31,400 $ 300,000 $5,000
                      * CUSTOMER CENTER POLICY *
    MTG1 LOAN #            CODE        CHGS ON POL
      NAME COUNTRYWIDE FUNDING CORP    ITS SUCCESSORS &/OR ASSIGNS
    STREET INS DEPT SV 22 PO BOX 10212 ATIMA    LOT # 13   BLOCK # W
      CITY VAN NUYS          ST CA ZIP 91410    NY3   ADDITION BLK 1 CROWN HEIG
      MTG2 LOAN #         CODE           SRC 0
      NAME
    STREET
      CITY               ST    ZIP
          DEDUCTIBLE      YR    -PROT-  PREM LTD OP  KEY   WIND
    OCCUPANCY TYPE AMT   CONST  BLT  TERR CLASS CD GRP  ACC ID RATE CERT
        PERC     FRAME  1955 10   04     0.00
    FT FROM MI FROM FIRE TOWN/ SO ST  #   -HO4/6-  DOUBLE   HI WIND RENEWAL
    HYD    FIRE STA DISTRICT   IND SNMBLS RATE TYPE WALL CR  CODE     CR
    500    03   FPP USED
    HO4/6-# APTS     HO 256 LIMIT       MINE SUBSIDENCE        RET CR
    EXCEPTIONS WIND        THEFT    RENOVATION YEARS H-    W-   P-  SHU
                              AUTO POL #
                              ACCT CR N   MEM     S/P SPEC F
    COMPANION POL #                  COSTIMATOR OVERRIDE
    DWELLING TYPE SINGLE   SINGLE ENTRY  DEVIATION 1.24 CITY CD    CNTY CD 061
    DED #1: 01570
    DED #2: 01570 FRINGE IND   FRINGE CITY CD    FRINGE CNTY CD    DWELL CL
    DED #3:     HYD TYPE  HYD IN CITY  FIRE DISTRICT: FIRE   WATER     SPECIALTY
    FL ORD/LAW REJECT    BCEG   BCEG YEAR      INDIVID GRADE   FLOOD POL
    BILL METHOD  PAYOR      BILL PLAN  ACCOUNT #   PREMIUM PAYMENT SCHEDULE
    SINGLE BILL  1ST MORTGAGEE  F1              DUE DT    PREMIUM
0                                            010700    149700
    IF OTHER PAYOR                      CANC R/P
      NAME
    STREET                              REWRITE   OLD RATE DATE
      CITY               ST    ZIP      HCC IND   GUARANTEE DT
      BASIC
0   CHART  COV E OR F DUPL OF ADDL RES ADDL RES  AMENDED
    PREM   +/- PREM   LIAB OR OCC PREM EMPL PREM COV PREM
    $1,355    $17
    COV D INCR PREM        TOTAL ENDT PREM  $315 TOTAL POL PREM   $1,497.00
    COV B DECR CR.
    DED #1 PREM        DED #2 PREM       DED #3 PREM
1
    *** COSTIMATOR -- UNIT
        AS OF DATE   000000
        VERSION DT   0000
```

```
     REPL COST    00094673        HRQ IND   HRQ DATE
          %ITV    166          PC IND   PC LETTER DATE
     CONST CLASS  STANDARD
     TOT # UNITS  000              INS RPT N
POLICY # 65 RB  923451   NAME: ROWE JAMES D & CARRIE LEE
FORM          .  POLICY TYPE  DWLG CITY/TOWN
HO-B   01-96  PREFERRED   WITHIN CITY/TOWN LIMITS? Y/N Y
ENDT #                      FIRE PROT PRVDR HARLINGEN
TEXAS CREDITS:                             PCNT PD CR 14
  FIRE CNT  BURGLAR CNT  SPRINKLERS     DEAD BOLT   DEAD BOLT CRDT
 HOME 5%   YEAR         5% CRDT      HOME 15%   YEAR      15% CRDT
  CNTRL FIRE  $95  LOCAL FIRE      FIRE ALARM FD       SPRKLRS SOME
  CNTRL BURG  $95  LOCAL BURG      BURG ALARM PD       SPRKLRS ALL


HO-101   REPLACEMENT COST FOR PERSONAL PROPERTY PREMIUM      $68
HO-105   RESIDENCE GLASS                    PREMIUM          $7
         UNSCHEDULED GLASS
HO-110   INC. LIMIT ON JEWELRY/WATCHES/FURS    PREMIUM       $60
         INC. LIMIT   $4,500   TOTAL LIMIT   $5,000
HO-201   PERSONAL INJURY COVERAGE             PREMIUM        $20
         EXCLUSION 3 ELIMINATED
 HO160  SPP                          PREMIUM     $160.00
      CL 1 AMT   $12,325 PR    $160
         M-12-1 SCHEDULE
          PRIM    C SEC      C  ORIG PREM       MAJOR TAX LOC SPEC   ST
  TYP STPREM   R PREM       R PRIM   SEC    COMM LINE  RI CO FILE    ID
31  42 133700          0                 100  7719              7R
855006122  124032191E  55   12216600157    135555 1066  91  16
31  42  16000          0                 100  7800             MA
470071   78550 50   0000000123          01
```

# QUICK REFERENCE
## TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ......................................................... 1
Definitions ................................................................... 1

### SECTION I - PROPERTY COVERAGE

Coverage A
  Dwelling ................................................................. 2
  Other Structures ...................................................... 2
Coverage B
  Personal Property ..................................................... 2
  Personal Property Off Premises ................................. 2
Special Limits of Liability ............................................ 2
Property Not Covered .................................................. 3
Extensions of Coverage
  Debris Removal ........................................................ 3
  Loss of Use ............................................................. 3
  Reasonable Repairs .................................................. 3
  Trees, Shrubs, Plants and Lawns ............................... 4
  Property Removed ..................................................... 4
  Consequential Loss ................................................... 4
  Automatic Removal ................................................... 4
Perils Insured Against
  Coverage A (Dwelling) .............................................. 4
  Coverage B (Personal Property) ................................. 4
Exclusions .................................................................. 5
Deductible .................................................................. 6
Section I Conditions
  Insurable Interest and Limit of Liability ..................... 7
  Residential Community Property Clause ...................... 7
  Duties After Loss
    **Your Duties After Loss** ......................................... 7
    Our Duties After Loss ........................................... 8
  Loss Settlement ....................................................... 8
  Loss to a Pair or Set ............................................... 9
  Salvage Rights ......................................................... 9
  Appraisal ................................................................ 9
  Loss Payment .......................................................... 9
  Catastrophe Claims .................................................. 9
  Other Insurance ....................................................... 10
  Suit Against Us ........................................................ 10
  Abandonment of Property ......................................... 10
  **Vacancy-Suspension of Coverage** ......................... 10
  Mortgage Clause ...................................................... 10
  No Benefit to Bailee ................................................. 11

### SECTION II - LIABILITY COVERAGE

Coverage C (Personal Liability) ..................................... 11
Coverage D (Medical Payments to Others) ..................... 11
Exclusions
  Coverage C and D Exclusions ..................................... 11
  Coverage C Exclusions .............................................. 13
  Coverage D Exclusions .............................................. 13
Additional Coverages
  Claim Expenses ........................................................ 13

Imperative Medical Expenses to Others ........................ 14
Damage to Property of Others ..................................... 14
Section II Conditions
  Limit of Liability ...................................................... 14
  Severability of Insurance .......................................... 14
  Duties After Loss ..................................................... 14
  Duties of an Injured Person ....................................... 14
  Payment of Claim Under Coverage D .......................... 15
  Suit Against Us ........................................................ 15
  Bankruptcy of the Insured ......................................... 15
  Other Insurance ....................................................... 15
  Notice of Settlement of Liability Claim ....................... 15

### POLICY CONDITIONS
### APPLYING TO SECTIONS I AND II

Policy Period .............................................................. 15
Concealment or Fraud ................................................. 15
Liberalization Clause ................................................... 15
Waiver or Change of Policy Provisions .......................... 15
Cancellation ............................................................... 16
Refusal to Renew ....................................................... 16
Assignment ................................................................ 16
Subrogation ............................................................... 16
Death ........................................................................ 16

---

### YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

Section II:

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE
PAGES 7 AND 14 OF YOUR POLICY

---

Prescribed by the State Board of Insurance
Homeowners Form B - Effective July 8, 1992
(Revised January 1, 1996)



# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1   **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2.  **"Business"** includes trade, profession or occupation.

3.  **"Business day"**, when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4   **"Insured"** means you and residents of your household who are:

   a.   your relatives; or

   b.   other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c.   any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured.**

   d.   With respect to any vehicle to which this policy applies:

   (1)   any employee of an **insured** while engaged in the employment of the **insured;** or

   (2)   any other person using the vehicle on an **insured location** with your consent.

5.  **"Insured location"** means:

   a.   the **residence premises.**

   b.   the part of other premises, other structures and grounds you use as a residence and:

   (1)   which is shown on the declarations page; or

   (2)   which you acquire during the policy period for your use as a residence.

   c.   any premises you use in connection with a premises in 5.a. or 5.b. above.

   d.   any part of a premises:

   (1)   not owned by an **insured;** and

   (2)   where an **insured** is temporarily residing.

   e.   vacant land, other than farm land, owned by or rented to an **insured.**

   f.   land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured.**

   g.   individual or family cemetery plots or burial vaults of an **insured.**

   h.   any part of a premises occasionally rented to an **insured** for other than **business** use.

6   **"Occurrence"** means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

7   **"Property damage"** means injury to, destruction of, or loss of use of property.

8   **"Residence employee"** means an employee of an **insured** who performs duties related to the ownership, maintenance or use of the **residence premises,** including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an **insured.** This does not include employees while performing duties related to the **business** of an **insured.**

9    **"Residence premises"** means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an insured resides or intends to reside within 60 days after the effective date of this policy.

---

## SECTION I - PROPERTY COVERAGE

---

### COVERAGE A (DWELLING)

We cover:

1    the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2.    other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

*The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.*

We do not cover other structures:

a.    used for business purposes; or

b.    wholly rented to any person, unless used solely as a private garage.

3.    wall to wall carpeting attached to a building on the **residence premises.**

### COVERAGE B (PERSONAL PROPERTY)

We cover:

1.    a.    personal property owned, worn or used by an **insured** while on the **residence premises.** This includes window or wall air conditioning units.

b.    at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured.**

2.    a.    personal property owned, worn or used by an **insured** anywhere in the world.

b.    at your request, personal property of a **residence employee** when:

(1)    the property is away from the residence premises of the **residence employee** and in the control of the **residence employee;** and

(2)    while the **residence employee** is performing work for you.

Our total limit of liability under 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1.    Money/Bank Cards. $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured.**

2.    Bullion/Valuable Papers. $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, transportation or other tickets.

3.    Jewelry/Watches/Furs. $500 for loss by theft of gems, watches, jewelry or furs.

4    **Business** Personal Property.   $2,500 on **business** property.

We do not cover any **business** property:

a.    that consists of samples or articles for sale or delivery; or

b.   if the property is away from the **residence premises.**

**PROPERTY NOT COVERED.** We do not cover:

1.   articles separately described and specifically insured by this or other insurance.

2.   animals or birds.

3    motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

However, we do cover such vehicles which are not subject to motor vehicle registration and are:

a.   devices and equipment for assisting the handicapped.

b.   power mowers.

c.   golf carts.

d.   vehicles or machines used for recreational purposes while located on the **residence premises.**

e    farm equipment not designed for use principally on public roads.

4.   trailers, semi-trailers or mobile homes.

However, we do cover:

a.   trailers and semi-trailers that are designed for use principally off public roads.

b.   boat trailers while on the **residence premises.**

5.   aircraft meaning any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

6.   watercraft, including outboard motors and furnishings or equipment.

We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the **residence premises.**

7.   property of roomers or tenants.

8.   property usually rented to others off the **residence premises.**

**EXTENSIONS OF COVERAGE.**

1.   **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

a.   debris of covered property if a Peril Insured Against causes the loss.

b.   a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

This does not increase the limit of liability that applies to the damaged property.

2.   **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable, we cover:

a.   additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

b.   fair rental value, meaning the fair rental value of that part of the **residence premises** usually rented to others by you, less any expenses that do not continue.

The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled

The periods of time for loss of use are not limited by expiration of this policy.

3    **REASONABLE REPAIRS.** If a Peril Insured Against caused the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4    TREES, SHRUBS, PLANTS AND LAWNS. We cover trees. shrubs. plants and lawns, on the **residence premises,** only for loss caused by the following Perils Insured Against Fire or Lightning, Explosion. Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism and Malicious Mischief. Riot and Civil Commotion and Theft or attempted theft.

The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability We will not pay more than $250 for any one tree. shrub or plant. including the cost of removal We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability The deductible clause does not apply to trees, shrubs, plants and lawns.

5    PROPERTY REMOVED. We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability

6    CONSEQUENTIAL LOSS. We insure.

a.    property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

b.    property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7    AUTOMATIC REMOVAL. If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

a.    the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property)

b.    property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

## SECTION I PERILS INSURED AGAINST

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling), unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions

1    **Fire and Lightning.**

2.    **Sudden and Accidental Damage from Smoke.**

3.    **Windstorm, Hurricane and Hail.**

4    **Explosion.**

5.    **Aircraft and Vehicles.**

6.    **Vandalism and Malicious Mischief.**

7.  **Riot and Civil Commotion.**

8.  **Collapse of Building** or any part of the building.

9   **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. **Freezing** of household appliances.

12. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

---

## SECTION I EXCLUSIONS

---

1.  The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

    a.  We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

    b.  We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

    c.  We do not cover loss caused by windstorm, hurricane or hail to:

        (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

        (2) radio and television towers, outside satellite dishes, masts and antennas, including lead–in wiring, windchargers and windmills.

        (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

    d.  We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

        (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured,** except while an **insured** is temporarily living there.

        (2) building materials and supplies not on the **residence premises.**

    e.  We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

    f.  We do not cover loss caused by:

        (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

        (2) rust, rot, mold or other fungi.

        (3) dampness of atmosphere, extremes of temperature.

        (4) contamination.

        (5) rats, mice, termites, moths or other insects.

        We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

**Form B**                                         5

g    We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises.**

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy

h    We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy

i    We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j    We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

(1)    maintain heat in the building; or
(2)    shut off the water supply and drain plumbing, heating and air conditioning systems of water.

k.    We do not cover loss caused by earthquake, landslide or earth movement.

2    GOVERNMENTAL ACTION.

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3.    BUILDING LAWS.

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

4    WAR DAMAGE.

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5    NUCLEAR DAMAGE.

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

## SECTION I DEDUCTIBLE

**DEDUCTIBLE CLAUSE 1 - WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN -** The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 - ALL OTHER PERILS -** The amount shown on the declarations page for Deductible Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

## SECTION I CONDITIONS

1   **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a   to the <u>insured</u> for more than the amount of the <u>insured's</u> interest at the time of loss; or

    b   for more than the applicable limit of liability.

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

**Article 6.13.** Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2.   **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3.   **Duties After Loss.**

    a.   **Your Duties After Loss.** In case of a loss to covered property caused by a Peril Insured Against, you must:

        (1)   give prompt written notice to us of the facts relating to the claim.

        (2)   notify the police in case of loss by theft.

        (3)   (a)   protect the property from further damage.

            (b)   make reasonable and necessary repairs to protect the property.

            (c)   keep an accurate record of repair expenses.

        (4)   furnish a complete inventory of damaged personal property showing the quantity, description, amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

        (5)   as often as we reasonably require:

            (a)   provide us access to the damaged property.

            (b)   provide us with pertinent records and documents we request and permit us to make copies.

            (c)   submit to examination under oath and sign and swear to it.

        (6)   send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

            (a)   This proof of loss shall state, to the best of your knowledge and belief:

                (i)   the time and cause of loss.

                (ii)   the interest of the <u>insured</u> and all others in the property involved including all liens on the property.

                (iii)   other insurance which may cover the loss.

                (iv)   the actual cash value of each item of property and the amount of loss to each item.

            (b)   If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

       (i)    the replacement cost of the described dwelling.

       (ii)   the replacement cost of any other building on which loss is claimed.

       (iii)  the full cost of repair or replacement of loss without deduction for depreciation.

b   **Our Duties After Loss.**

    (1)  Within 15 days after we receive your written notice of claim, we must:

       (a)  acknowledge receipt of the claim.

       If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

       (b)  begin any investigation of the claim.

       (c)  specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

       We may request more information, if during the investigation of the claim such additional information is necessary.

    (2)  After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

       (a)  within 15 business days; or

       (b)  within 30 days if we have reason to believe the loss resulted from arson.

    (3)  If we do not approve payment of your claim or require more time for processing your claim, we must:

       (a)  give the reason for denying your claim, or

       (b)  give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4.   **Loss Settlement.** Covered property losses are settled as follows:

   a.  Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

    (1)  the actual cash value at the time of loss determined with proper deduction for depreciation;

    (2)  the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

    (3)  the specified limit of liability of the policy.

   b.  Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awnings and fences, will be at replacement cost settlement subject to the following:

    (1)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

    (2)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

Replacement Cost of the Loss

X

Coverage A (Dwelling) Limit of Liability

80% of Replacement Cost of the Dwelling

    (3)  If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

   In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following:

    (1)   the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

    (2)   the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

    (3)   the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5    Loss to a Pair or Set. In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6.    Salvage Rights. If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7.    Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

    a.   the full replacement cost of the dwelling.

    b.   the full replacement cost of any other building upon which loss is claimed.

    c   the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8.    Loss Payment.

    a.   If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

    b.   If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9.    Catastrophe Claims.

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

    a.   is declared a disaster under the Texas Disaster Act of 1975; or

    b.   is determined to be a catastrophe by the State Board of Insurance.

10. **Other Insurance – Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

    a    The word "mortgagee" includes trustee.

    b    We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

    c.   The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d.   If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

    (1) at our request, pays any premiums due under this policy, if you have failed to do so.
    (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.
    (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

    All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

    e.   If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.
    (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

    At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

    f    If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

    If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

    If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail notice.

    We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

    g    If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

    The morgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h.  If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15  **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

---

## SECTION II LIABILITY COVERAGE

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1  pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include pre-judgement interest awarded against the **insured;** and

2  provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments To Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury.**   Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to **residence employees.** As to others, this coverage applies only:

1  to a person on the **insured location** with the permission of an **insured.**

2.  to a person off the **insured location,** if the **bodily injury:**

   a.  arises out of a condition on the **insured location** or the ways immediately adjoining.

   b.  is caused by the activities of an **insured.**

   c   is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured.**

   d.  is caused by an animal owned by or in the care of an **insured.**

---

## SECTION II EXCLUSIONS

1  **COVERAGE C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

   a.  **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured;**

   b.  **bodily injury** or **property damage** arising out of or in connection with a **business** engaged in by an **insured.** But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c.  **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location:**

      (1)  on an occasional basis if used only as a residence.

      (2)  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

      (3)  in part, as an office, school or studio.

      (4)  if the rental is for not more than three car spaces or stalls in garages or stables.

   d   **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services.

   e   **bodily injury** or **property damage** arising out of a premises:

      (1)  owned by an **insured;**

      (2)  rented to an **insured;** or

      (3)  rented to others by an **insured;**

---

that is not an **insured location.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

f.    **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

    (1)    motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment,

    (2)    trailers, semi-trailers or mobile homes;

    which are owned or operated by or rented or loaned to an **insured.**

However, this exclusion does not apply to:

    (1)    motor vehicles which are not subject to motor vehicle registration and are:

        (a)    used for assisting the handicapped.

        (b)    used to service an **insured location.**

        (c)    golf carts while on the **residence premises** or used for golfing purposes.

        (d)    designed and used for recreational purposes, and are:

            (i)    not owned by an **insured;** or

            (ii)    owned by an **insured** while on the **residence premises.**

        (e)    in dead storage on the **residence premises.**

        (f)    used exclusively on the **residence premises.**

    (2)    trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

g.    **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft

    (1)    with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured.**

    (2)    powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured.**    But, outboard motors of more than 25 total horsepower are covered for the policy period if:

        (a)    you acquire them prior to the policy period and:

            (i)    you declare them at policy inception; or

            (ii)    your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

        (b)    you acquire them during the policy period.

    (3)    that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured.**

This exclusion does not apply while the watercraft is on the **residence premises.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

h.    **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

i.    **bodily injury** or **property damage** arising out of:

    (1)    the entrustment by an **insured** to any person; or

    (2)    the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

j    **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.    **bodily injury** or **property damage** arising out of the transmission of sickness or disease by an **insured** through sexual contact.

l.    **bodily injury** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **insured** under any workers' compensation law or occupational disease law

2.    **Coverage C (Personal Liability)** does not apply to:

a.    liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

    (1)    that directly relate to the ownership, maintenance or use of an **insured location;** or

    (2)    where the liability of others is assumed by an **insured;**

    unless excluded elsewhere in this policy.

b.    **property damage** to property owned by an **insured.**

c.    **property damage** to property rented to, occupied or used by or in the care of the **insured.**

This exclusion does not apply to **property damage** caused by fire, smoke or explosion.

d.    **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e.    **bodily injury** to you or an **insured** within the meaning of part a. or part b. of **insured** as defined.

3.    **Coverage D (Medical Payments to Others)** does not apply to:

a.    **bodily injury** to a **residence employee** if the **bodily injury:**

    (1)    occurs off the **insured location;** and

    (2)    does not arise out of or in the course of the **residence employee's** employment by an **insured.**

b.    **bodily injury** to any person, other than a **residence employee** of an **insured,** regularly residing on any part of the **insured location.**

## SECTION II ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1.    **Claim Expenses. We pay:**

a.    expenses we incur and costs taxed against an **insured** in any suit we defend.

b.    premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

c.    reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

d.    interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2    **Imperative Medical Expenses to Others.** We pay expenses incurred by an insured for immediate medical and surgical relief to others if imperative at the time of the accident.

3    **Damage to Property of Others.** We pay replacement cost up to $500 per occurrence for property damage to property of others caused by an insured.

We do not pay for property damage:

a    caused intentionally by an insured who is 13 years of age or older
b.    to property owned by an insured.
c    to property owned by or rented to a tenant of an insured or a resident in your household.
d.    arising out of:
     (1)    a business engaged in by an insured.
     (2)    any act or omission in connection with a premises owned, rented or controlled by an insured, other than the insured location.
     (3)    the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an insured.

---

# SECTION II CONDITIONS

---

1.    **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one occurrence. This limit is the same regardless of the number of insureds, claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for bodily injury to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000

2    **Severability of Insurance.** This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.

3    **Duties After Loss.** In case of an accident or occurrence, the insured will perform the following duties that apply or will help us by seeing that these duties are performed:
a    Give written notice to us or our agent as soon as is practical, which sets forth
     (1)    the identity of the policy and insured.
     (2)    reasonably available information on the time, place and circumstances of the accident or occurrence.
     (3)    names and addresses of any claimants and witnesses.
b    Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence.
c.    At our request, help us:
     (1)    to make settlement.
     (2)    to enforce any right of contribution or indemnity against any person or organization who may be liable to an insured.
     (3)    with the conduct of suits, including attending hearings and trials
     (4)    to secure evidence and obtain the attendance of witnesses
d    The insured will not, except at the insured's own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the bodily injury.

4.    **Duties of an injured Person - Coverage D (Medical Payments to Others).**

The injured person or someone acting for the injured person will:

ENDORSEMENT NO. HO-101
**Effective**
September 1, 1993

**REIMBURSEMENT FOR
REPLACEMENT OF
PERSONAL PROPERTY**

SECTION I PROPERTY COVERAGE

For an included additional premium, our limit of liability and payment for covered loss to:

1.    personal property; and

2.    wall-to-wall carpeting and cloth awning (Forms HO-B & HO-C only);

is extended to include Replacement Cost. Replacement Cost means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following:

a.    the Coverage B (Personal Property) limit of liability;

b.    the replacement cost at the time of loss;

c.    for property that is repairable, the cost of repair with material of like kind and quality with no deduction for depreciation; or

d.    the interest of the <u>insured</u>.

**We do not pay replacement cost for:**

a.    property which cannot be replaced.

b.    property not maintained in good or workable condition.

c.    property that is either obsolete or useless to the <u>insured</u> at the time of loss.

d.    watercraft including outboard motors for any replacement cost in excess of $2,500.

    We will pay replacement cost of watercraft including outboard motors up to a limit of $2,500.

e.    Property that is not repaired or replaced.

**Loss Settlement:**

a.    We will pay you:

    1.    the replacement cost of your damaged property up to $1,500; and

    2.    the actual cash value of your remaining damaged property

    within 5 business days after we notify you that we will pay the claim.

    If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500. You must repair, restore or replace the property within 365 days after the loss. Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored or replaced.

a.    In lieu of (a) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.



Prescribed by the State Board of Insurance
Endorsement No. HO-101-Replacement of Personal Property
Effective September 1, 1993

**ENDORSEMENT NO. HO-105**
**Effective**
**July 8, 1992**

# RESIDENCE GLASS COVERAGE

The terms and conditions of this endorsement apply only to the property described in this endorsement. None of the terms, conditions and limits of liability stated in the policy apply to this endorsement except the Waiver or Change of Policy Provisions, Cancellation, Assignment, Subrogation and Definitions.

This insurance applies to: (check the box(es) that applies)

☐ Unscheduled Glass;

☐ Scheduled Glass described in the schedule below;

while in or on the dwelling or other structures on the **residence premises.**

1. **Residence Glass Coverage.** We will pay for damages to residence glass caused by breakage or by chemicals applied to such glass if:

   a. described in the schedule below.

   b. permanently attached to the dwelling or other structures on the **residence premises,** including storm windows and doors not permanently attached.

   We will also pay for making temporary repairs, resulting damage to encasing frames, and removing or replacing obstructions because of a covered loss to glass.

2. **Exclusions.** We will not pay for loss or damage caused by:

   a. fire.

   b. war. This includes undeclared war, civil war, insurrection, rebellion or revolution or any consequence of these.

   c. nuclear reaction, nuclear radiation or radioactive contamination or any consequence of these.

3. **Loss Settlement.**

   a. Unscheduled Residence Glass. We will not pay more than:

      (1) $100 for all damage in any one occurrence for each of the following objects:

         (a) multiple plate insulating unit;
         (b) radiant heating panels;
         (c) conservatory or greenhouse glass;
         (d) chandeliers or light fixtures;
         (e) jalousies, louvers or shutters;
         (f) venetian type doors or windows;
         (g) stained or leaded glass; or
         (h) glass bricks, shingles or other structural glass.

      (2) $100 for any one pane or plate of glass comprising any other object not listed in 3.a.(1) above.

   b. Scheduled Residence Glass. We will not pay more than the smallest of the following:

      (1) actual cash value of the property at the time of the loss;

      (2) the cost to repair the damaged property with the like kind and quality or replace the glass with safety glazing material when required by ordinance or law; or

      (3) the limit of liability stated in the schedule below.



c.   Pair or Set. If loss to an article which is part of a pair or set occurs, we will measure the loss at a reasonable and fair proportion of the total value of the pair or set giving consideration to the importance of the article.

We will not pay a total loss to the pair or set when the loss is to an article that is part of a pair or set.

d.   We may pay for the loss in money or may repair or replace the property.   Any property we pay for or replace will become our property.

## SCHEDULED RESIDENCE GLASS

| Number of Plates | Length in Inches | Width in Inches | Description of Glass, Lettering and Ornamentation; Position in Building. The glass in plain flat glass with all edges set in frames, unless otherwise stated herein. | Specific Limit (If any) | Premium |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Total Scheduled Glass Premium $

4.   **Your Duties After Loss.** In case of loss to covered property, you must:

a.   give prompt written notice to us.

b.   file a proof of loss at our request, on forms that we provide. If we request a proof of loss, we must request it not later than the 15th day after we receive your written notice. We may require this filing of proof of loss to be under oath.

5.   **Action Against Us.** There can be no action against us unless you have complied with all the terms of this policy.

6.   **Other Insurance.** If a loss covered under this endorsement is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this endorsement bears to the total amount of valid and collectible insurance covering the loss.

Prescribed by the State Board of Insurance        2
Endorsement No. HO−105 − Residence Glass Coverage − Effective July 8, 1992



**ENDORSEMENT NO. H0-110**
**Effective**
**July 8, 1992**

**INCREASED LIMIT**
**ON JEWELRY, WATCHES AND FURS**

For an included additional premium, the Special Limit of Liability for Jewelry/Watches/Furs under Coverage B (Personal Property) is increased from $500 to the limit shown on the declarations page for this endorsement.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-110 - Increased Limit on Jewelry, Watches and Furs - Effective July 8, 1992**

ENDORSEMENT NO. HO-201                    **PERSONAL INJURY COVERAGE**
        Effective
     July 8, 1992

For an included additional premium, under Coverage C (Personal Liability), the definition of **bodily injury** is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, malicious prosecution, or willful detention or imprisonment.

2. Libel, slander or defamation of character.

3. Invasion of privacy, wrongful eviction or wrongful entry.

Personal injury coverage does not apply to:

1. liability assumed by an **insured** under any contract or agreement.

2. injury caused by the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of an **insured.**

\*3 injury caused by an **insured** and sustained by any person who is an employee of the **insured** at the time of the offense causing the injury.

4. civic or public activities performed by an **insured** for which the insured receives remuneration.

5. injury arising out of any advertising, broadcasting, or television activities by or for an **insured.**

\*This exclusion may be eliminated by increasing the premium 50%.

**Prescribed by the State Board of Insurance**
Endorsement No. HO−201−Personal Injury Coverage−Effective July 8, 1992

ENDORSEMENT NO. HO-160
**Effective**
**October 1, 1990**

# SCHEDULED PERSONAL PROPERTY

| Class of Scheduled Personal Property | Amount of Insurance | Rate | Premium |
|---|---|---|---|
| 1. Jewelry, as scheduled below. | $ | $ | $ |
| 2. Furs and garments trimmed with fur or consisting principally of fur, as scheduled below. | | | |
| 3. Cameras, projection machines, films and related equipment, as scheduled below. | | | |
| 4. Musical instruments and related articles of equipment, as scheduled below. You agree not perform with these instruments for pay unless an additional premium is charged. Teaching activities in a residence shall not be considered performing with these instruments for pay. | | | |
| 5. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry. | | | |
| 6. Golfer's equipment, meaning golf clubs, golf clothing and other golf equipment. This includes your other clothing while contained in a locker when you are playing golf. | | | |
| 7. Fine Arts, as scheduled below. This premium is based on your statement that the property insured is located at the following address(es): | | | |
| 7a. For an additional premium, included under Fine Arts, paragraph 3.d.(2) under Perils Insured Against is deleted for the articles marked with a double asterisk (* *) in the schedule below. | | | |
| 8. Stamp Collections. | | | |
| 9. Coin Collections. | | | |

## SCHEDULE

| Article | Description | Amount of Insurance |
|---|---|---|
| | | |

For an additional premium, we cover the classes of scheduled property for which an amount of insurance and premium are shown above. The provisions of this endorsement apply only to the property scheduled under this endorsement. In addition, the provisions of the policy not in conflict with any provision of this endorsement will apply, except SECTION I PERILS INSURED AGAINST, SECTION I DEDUCTIBLES, SECTION I EXTENSIONS OF COVERAGE AND SECTION I EXCLUSIONS.

W

Prescribed by the State Board of Insurance
Endorsement No. HO-160 – Scheduled Personal
Property – Effective October 1, 1990

1. **NEWLY ACQUIRED PROPERTY.**

   We cover newly acquired property of a class of scheduled property already insured for up to 25% of the amount of insurance for that class of property. You must:

   a. report the newly acquired property to us within 90 days; and
   b. pay the additional premium from the date acquired.

2. **PERILS INSURED AGAINST.**

   We insure against all risks of loss or damage to property described in this endorsement unless otherwise excluded under the Exclusions.

3. **EXCLUSIONS.**

   a. We do not cover loss caused by wear and tear, gradual deterioration, moths, rats, mice, or any quality in property that causes it to damage or destroy itself.

   b. We do not cover loss resulting directly or indirectly from:

      (1) War. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

      (2) Nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

   c. We do not cover loss caused by the destruction of property by order of governmental authority.

      But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

   d. If Fine Arts are insured, we do not cover loss to fine arts caused by or resulting from:

      (1) repairing, restoration or retouching process.

      (2) breakage of statuary, marbles, glassware, bric-a-brac, porcelains and similar fragile articles, unless breakage is caused by:
          (a) fire, lightning or explosion;
          (b) windstorm, earthquake, or flood;
          (c) aircraft;
          (d) vandalism or malicious mischief, theft or attempted theft;
          (e) collision, derailment or overturn of conveyance.

      (3) any cause, to property on exhibition at fair grounds or premises of national or international expositions, unless the premises are covered by this policy.

   e. We do not cover loss to golf balls unless caused by:

      (1) fire.

      (2) burglary, provided there are visible marks of forcible entry into the building, room or locker.

   f. If stamp collections or coin collections are insured, we do not cover loss to stamp collections or coin collections caused by:

      (1) fading, creasing, denting, scratching, tearing or thinning.

      (2) transfer of colors, inherent defect, dampness, extremes of temperature or gradual depreciation.

      (3) being handled or worked on.

      (4) the mysterious disappearance of individual stamps, coins or other articles unless the item is:
          (a) described and scheduled with a specific amount of insurance; or
          (b) mounted in a volume and the page it is attached to is also lost.

      (5) any cause, to property in the custody of transportation companies or shipment by mail other than registered mail.

      (6)  theft of covered property from any unattended automobile except while such property is being shipped by registered mail.

      (7)  any cause, to property not part of a stamp or coin collection.

4.   **TERRITORIAL LIMITS.**

     We cover the described property anywhere in the world. However, Fine Arts are covered only within the United States and Canada.

5.   **SPECIAL PROVISIONS.**

   a.   Fine Arts. You agree that the covered property will be packed and unpacked by competent packers.

   b.   Stamp Collections, including the following owned by you or in your custody or control:

      (1)  due, envelope, official, revenue, match and medicine stamps;

      (2)  covers, locals, reprints, essays, proofs and other philatelic property; or

      (3)  books, pages and mountings of items in (1) and (2) above.

   c.   Coin collections, including the following owned by you or in your custody or control:

      (1)  medals, paper money, bank notes;

      (2)  tokens of money and other numismatic property; or

      (3)  coin albums, containers, frames, cards and display cabinets in use with the collection.

6.   **CONDITIONS.**

   a.   LOSS CLAUSE. The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled article. If we pay a claim for a total loss of one or more sheduled articles, we will:

      (1)  refund the unearned premium applicable to such article(s); or

      (2)  apply the unearned premium to the premium due for the replacement to the scheduled article(s).

   b.   LOSS SETTLEMENT. Covered property losses are settled as follows:

      (1)  Jewelry and Fine Arts: We will pay the amount shown for each scheduled article which is agreed to be the value of the value of the article.

          In case of a total loss to an article or articles which are part of a pair or set, we pay the full amount shown for the scheduled pair or set. If we pay the full amount scheduled for the pair, you must give us the remaining articles of the pair or set.

      (2)  Coin or Stamp Collection:

        (a)  For any one stamp, coin or other article individually scheduled, we will pay up to the amount shown for the individually scheduled article.

        (b)  For any pairs, strips, blocks, series, sheets, covers, frames, cards or similar property we will pay as follows:

           i.   for a total loss, up to the amount shown for the scheduled pairs, strips, blocks, series, sheets, covers, frames, cards or similar articles.

           ii.   for a partial loss, up to the cash market value of the whole set at the time of the loss, less the cash market value of the remainder of the set.

              However, if the amount scheduled is less than the cash market value, we will not pay more than the proportion that the amount scheduled bears to the cash market value.

        (c)  For property not provided for in (a) or (b) above we will not pay more than:

           i.   the actual cash market value of the property at the time of loss; or

           ii.   $1,000 on unscheduled numismatic property; or

           iii.   $250 on any one stamp, coin or other individual article or any one pair, strip, block, series, sheet, cover, frame, card or similar article.

        (d)  For property not specifically scheduled, we will not pay more than the proportion that the total amount shown on all unscheduled property bears to the actual cash market value of all unscheduled property at the time of the loss.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-160 – Scheduled Personal**
**Property – Effective October 1, 1990**

                                                    3